# COUNTY OF WINDSOR,

##### AT THE

### FEBRUARY TERM, 1858.

---

PRESENT.

HON. ISAAC F. REDFIELD, CHIEF JUDGE.
HON. MILO L. BENNETT,
HON. LUKE P. POLAND,
HON. ASA O. ALDIS,      } ASSISTANT JUDGES.
HON. JAMES BARRETT.

---

### THE CONNECTICUT AND PASSUMPSIC RIVERS RAILROAD COMPANY *v.* JESSE COOPER.

*Residence of Railway Companies in regard to the County and town where actions in their favor should be brought.*

The residence of a railway company, for the purpose of bringing actions in their favor, is the county or town upon the line of their road, where their principal office and the center of their business operations is situated.

The residence of the corporators has no bearing upon the question of the locality or residence of the corporation to which they belong.

The residence of a railway company is limited to the line of the legally defined route of their road.

The Connecticut and Passumpsic Rivers Railroad Company was chartered to construct a railroad from White River Junction, in Windsor county, to the north line of the state, in Orleans county, and their railway was constructed and in operation from White River Junction to St. Johnsbury, in Caledonia county. The company had no office in Windsor county except its ordinary stations, but had a general office in Orleans county. *Held*, that the corporation did not have such a residence in Windsor county as would enable it to maintain suits there against residents in other counties.

ASSUMPSIT to recover of the defendant three assessments upon ten shares of the plaintiffs' capital stock, for which the defendant had subscribed.

The defendant plead in abatement to the writ that at the time when the suit was brought neither the plaintiffs nor the defendant resided in the county of Windsor, where the writ was made returnable; but that the defendant resided in Irasburgh, in Orleans county, and that the plaintiffs resided, and were actually located and kept their office at Coventry, in Orleans county, and that, therefore, the suit should have been brought in the county court for Orleans county.

The plaintiffs replied that their charter authorized them to construct a railroad from White River Junction, in Windsor county, up the valleys of the Connecticut and Passumpsic rivers to the north line of the state, in the towns of Derby or Newport, in Orleans county, and that at the time of the commencement of this suit they had, in conformity with their charter, built their road from White River Junction to St. Johnsbury, in Caledonia county, and that it was actually located and in operation in the counties of Windsor, Orange and Caledonia, and also that several of the shareholders in the plaintiffs' capital stock, (naming them), resided in the county of Windsor.

To this replication the defendant demurred. The county court, at the May Term, 1857,—UNDERWOOD, J., presiding,—rendered judgment, *pro forma*, that the plea was sufficient and the replication insufficient, to which the plaintiffs excepted.

Connecticut and Passumpsic Rivers Railroad Company *v.* Cooper.

*Washburn & Marsh*, for the plaintiffs.

The averments in the replication show *residence* of the plaintiffs in Windsor county. They show that the plaintiffs are there located, existing and doing business as such corporation; that they are there exercising their franchise, under their charter, and that the corporators reside there.

We insist that a corporation is an inhabitant of any and every county and town in which it is located under its charter, and wheie it exists and does business, exercising there its corporate franchise. 2 Coke Inst. 703; *Rex* v. *Gardner*, Cowp. 79; *Taylor* v. *Crowland Gas and Coke Co.*, 29 Eng. L. & Eq. 515; *Bristol* v. *Chicago and Aurora R. R. Co.*, 15 Ill. 437; *Louisville R. R. Co.* v. *Letson*, 2 How. 497; *Marshall* v. *Balt. and Ohio R. R. Co.*, 16 How. 314; *Green Mt. T. Co.* v. *Hemmingway*, 2 Vt. 512.

This gives a rule which is reliable and capable of being deteimined by an inspection of the act of incorporation, while a rule of jurisdiction, based upon the location of the office of business, would vary with every annual election of officers.

Taxation, as to personal property, is based, in this state, upon inhabitancy. Comp. Stat. 450, sections 1, 2.

Shall the personal property of the plaintiffs, permanently in use in Norwich, be taxed in Coventry, because the clerk resides there? or in St. Johnsbury or Newbury, where the superintendent and president respectively have their offices? and shall the place of listing vary as often as their offices are changed? But if a corporation have a residence for purposes of taxation, it has the same residence for the purposes of a suit. WAYNE, J., in 2 How. 559.

*Peck and Colby*, for the defendant.

1. The defendant did not reside in Windsor county at the time of the purchase, and service of the plaintiff's writ. *That* is not claimed. Did the plaintiffs *reside* there at that time within the meaning of the statute? *That* is the question. Their principal place and office of business was then, and now is, in Orleans county. This fact is admitted by the pleadings. When a corporation is not located by the terms of its charter, its residence and location are regarded as being in the place where it keeps its principal office and does its business, which, in this case, is in Orleans county.

Both parties then are to be treated as residing in that county, and this action should have been brought there. *Sangamon & M. R. R. Co.* v. *County of Morgan*, 14 Ill. 163 ; *Mohawk and Hudson R. R. Co.* v. *Clute*, 4 Paige 384 ; *Providence and Worcester R. R. Co.* v. *Wright*, 2 Rhode Island 459 ; Redfield on Railways 526, sec. 5 ; *Taylor* v. *Crowland G. & C. Co.*, 29 L. & Eq. 516 ; *Lewis* v. *Denny*, 4 Cushing 588.

2. The location of the plaintiffs as a corporation is not fixed by their act of incorporation, and if the fact of their keeping their office and doing their business in the county of Orleans does not give them a location and residence in that county, they have none, and this suit should have been brought in the county where the defendant resides.

3. The plaintiffs rely upon the fact that their road runs into Windsor county, and that some of the stockholders reside there. This does not aid them. It does not constitute a *residence* of the corporation. The road is the *property* of the corporation, *but it is not the corporation.* Nor is the residence of some of the corporators the residence of the corporation. The location of a corporation can not be fixed in this way. If the plaintiffs are right in this position, then they are located wherever a corporator may reside. If corporators reside in each county in the state, then the corporation is located in every county, and they may sue in any county. This position is expressly denied by adjudications. Redfield on Railways 625 ; *Louisville R. Co.* v. *Letson*, 2 How. 497 ; *Marshall* v. *B. & O. R. R. Co.*, 16 How. 314.

The legislative construction of the law upon this subject is adverse to the plaintiff's view. By acts passed in 1853, a railway company may be sued and held to answer in any town or county in which the road is located. (Acts of 1853, pp. 7 and 14.) If the plaintiff is correct in his position, no such legislative provision is necessary.

The opinion of the court was delivered by

REDFIELD, Ch. J. The question presented in the present case is, where may a railway company be said to reside, for the purpose of bringing actions as plaintiff. There is no express statute upon the subject, except the general provision requiring actions to be

Connecticut and Passumpsic Rivers Railroad Company *v.* Cooper.

brought in the county where one of the parties reside, if both reside in the state, as in the present case.

The statute of 1853, allowing actions against railway companies to be brought in any county into which their route extends, seems to have no proper bearing upon the question, inasmuch as this special provision in regard to railway companies, defendant, is rather an implied expression of the sense of the legislature not to extend the same rule to actions in favor of such companies, by any express enactment, or else we should expect the provision would have been made general in the first instance. We conclude then, that strictly speaking, it can have no proper bearing upon the question.

The same may be said of the recent statute in this state,* fixing the locality of railway companies, for the purpose of bringing actions, to the place of their principal business center. It has no other effect than similar statutes in other states, which do indeed, when found to be uniform, tend to show the general sense upon the subject.

Some question is made in regard to the form of the pleadings in the present case. But we have not attempted to be very critical with either the plea or the replication, inasmuch as both parties seem desirous that the question involved should be determined. We think it may fairly be said that the plea and replication, taken together, present the following facts, so pleaded as to be admitted by the demurrer.

First, that the defendant resides in Orleans County. That the plaintiffs' road extends through Orleans, Caledonia and Orange Counties and part of Windsor County.

Second, that they have an office in Orleans County. But as the presumption or implication is against the pleader, which is the defendant in this case, we must conclude that it is not the principal office of business of the company.

Third, that the company have no such office of any kind in the county of Windsor, except, perhaps their ordinary way stations, to which no allusion is made in the pleadings, upon either side, and which may well enough be presumed to exist, notwithstanding the averments in the pleading.

---

* Acts of 1857, No. 6, page 10, section 1.

Connecticut and Passumpsic Rivers Railroad Company v. Cooper.

Fourth, that some of the corporators do reside in the county of Windsor.

The question is, then, whether it sufficiently appears by the pleadings in the case, that the company has no such locality in the county of Windsor, as will enable it to maintain actions in that county against residents in other counties.

I. It is obvious, we think, that the residence of the corporators can have no influence in regard to the locality of the corporation. The corporators in this company are the owners, for the time being, of the shares in the capital stock. This interest is merely that of a chose in action, a right to share ratably in the surplus or net earnings of the company. It will be obvious that the residence of the corporators in such a company could have no proper bearing upon the question of the locality of the company. The shares might all be owned by non-residents, or by the residents of other counties than those through which the road runs.

II. We think it safe, as a general rule, to say that a railway company, if it have any place of residence, must be limited to the range of its legally defined route. This is certainly in analogy to all other corporate companies. They are held to have their situs or residence where their principal business is transacted. This is so in the case of banks, manufacturing companies and many others, and, although these companies may, for some purposes, transact business out of the range of their ordinary locality, as they sometimes do, even in other states or counties, they are still regarded as having a fixed situs at the place where their principal business is done.

III. We think the same rule must govern in regard to railways. They all have certain centers, or one general center, of their business operations, and this almost of necessity confined to their route and its branches. In one case, it is held, that where the company locate their principal business offices in a city, not upon their line, that the company may be regarded as having its *situs* or residence for the purpose of maintaining actions, in that county. *Bristol* v. *Chicago and Aurora Railway*, 15 Ill. 437. The court in this case say, in delivering judgment, that the residence of the company, for the purpose of maintaining actions, may be regarded as extending wheresoever it performs its functions, and exercises its

32

franchises. But we are not prepared to adopt this view. The general principle of the decision, within reasonable limits, we regard as sound. And it is maintained in the other cases cited in argument by the defendant's counsel. And it does not seem to us that the cases cited by the plaintiffs' counsel, wherein corporations have been held to be liable to taxation as owners of real property, in the place of its locality, conflict in any sense with this general view. It seems to us, as before intimated, very questionable how far this rule should be so applied to railways, which are necessarily local, as to give them a residence or *situs* beyond the limits of their line. Cases may be supposed where this may seem plausible, but it seems to us a somewhat questionable test of locality when carried to that extent.

But we are certainly not prepared to wholly disregard it, as a test of the proper locality of such a corporation upon questions of residence affecting the liability to taxation for personalty, or the right to maintain suits. We think, in the cases of those companies which have one principal center of business, there can be no question that is to be regarded as the *situs* or residence of the company for such purposes. Where they have more than one such center along their line, they might, with some propriety, be allowed to sue, on that ground, in different local jurisdictions. But we are not prepared to extend this subdivision of locality to all the subdivisions of the business of the company, so as to give the company a residence at every way-station or throughout its whole line. No case has adopted any such rule, and we are not prepared to do it.

It seems to us that the fact, that the business of a railway extends throughout its road, no more defeats its locality or *situs* being determined by the place of its principal business office, than in the case of other corporations, more or less analogous. The case of a bank or manufacturing company, although differing in its general functions from those of a railway, yet may serve to illustrate the point. One important function and franchise of banking companies is, almost of necessity, under the present arrangement of business, performed in the great commercial cities of the continent, where all currency centers, and where to be of value it must be readily convertible into specie equivalents. And it often becomes necessary for such foreign banking companies in the cities, to perform there many

of their important offices, such as purchasing specie, and negotiating bills, protesting for non-payment and instituting suits. The same is true in regard to much of the business of manufacturing companies in converting their fabrics into money.

In the case of steamboat companies, chartered for the navigation of lakes and rivers, their business is of necessity extended over their line much in the same mode as that of railway companies. But none of these things have ever been regarded as affecting the *situs* of the companies. If their charter fixes no locality they are regarded as having their *situs* in the place of their principal office, at the center of their business operations. And it seems to us beyond all question that from the course of decisions, as well as of legislation and the general convenience of business, the same rule should be applied in determining the *situs* of a railway company.

The same rule has been applied to an ordinary partnership in this state in fixing the place of its liability to taxation for personalty. *Fairbanks* v. *Kittredge*, 24 Vt. 9. Judgment affirmed.