(16 Misc. Rep. 252.)

PEOPLE ex rel. INDIA RUBBER & GUTTA PERCHA INSULATING CO. v. BARKER et al.

(Supreme Court, Special Term, New York County.   March, 1896.)

1. CORPORATIONS—PRINCIPAL PLACE OF BUSINESS.
   A statement in a certificate of incorporation as to the location of the corporation's principal place of business is conclusive on the corporation.

2. TAXATION—ASSESSMENT—SWORN STATEMENT.
   Where a sworn statement of assets in gross has been furnished to the commissioners of taxes and assessments, they have no right to arbitrarily reject it as false, or to proceed in disregard of its statements, without evidence or information satisfactorily tending to show that the facts so stated are inaccurate or untrue.

3. SAME—ASSESSMENT ON EVIDENCE OUTSIDE STATEMENT.
   Where the commissioners have acted on evidence or information outside the sworn statement in making an assessment, their return should specify the information, in order that the court may determine whether their power was providently exercised.

4. SAME—INSUFFICIENT BASIS FOR REJECTING STATEMENT.
   Belief resulting merely from a comparison of a sworn statement with one made the year before by the same corporation is insufficient to justify the commissioners in rejecting the statement as unreliable.

5. SAME—REAL ESTATE—TOWN ASSESSORS—VALUATION.
   In determining the value of real estate as assets for the purpose of fixing the assessment of a corporation in respect to its personalty, the commissioners may act on their own judgment, but not on the assumption that the assessors in towns assess real estate there at 50 per cent. of its actual value.

Certiorari by the India Rubber & Gutta Percha Insulating Company against Edward P. Barker and others to review assessment of relator's property for personal taxes for the year 1894.

Thos. G. Shearman and John A. Garver, for relator.

Francis M. Scott (James M. Ward, of counsel), for respondents.

BEEKMAN, J.   This proceeding is instituted by writ of certiorari to review the action of the respondents in assessing the relator, a domestic corporation, for personal taxes for the year 1894.   The relator was primarily assessed in the sum of $250,000, which was subsequently reduced by the respondents to the sum of $69,000. The relator, considering itself still aggrieved, now asks for a review of the action of the commissioners on the grounds of illegality and error.

The illegality assigned is that the principal place of business of the corporation is in the city of Yonkers.   As it is conceded, however, that by its certificate of incorporation such place of business is stated to be in the city of New York, that fact is conclusive upon the relator, and the objection on this ground must therefore be overruled.   People v. Barker, 147 N. Y. 715, 42 N. E. 725.

The error assigned for which the action of the respondents is sought to be impeached will appear in the discussion of the facts. A sworn statement was furnished to the respondents by the treasurer of the relator, showing that the stock on hand, machinery, furniture and fitting, book accounts, bills receivable, and cash amounted in the aggregate to $181,569.01, and the liabilities of the corporation were stated to be $183,626.38, showing an excess of liabilities over personal property of $2,057.37. Upon this statement it was claimed that the assessment should have been canceled. The following facts also appear: That there were no surplus earnings, that no dividend had ever been paid upon the capital stock, and that said stock had not and never had had any market value, and was only of a nominal value,—a condition which is explained by the assertion that the greater part of the stock was originally issued in payment for certain patents which had ceased to have more than a nominal value. The only real estate owned by the corporation was situated in the city of Yonkers, Westchester county, and had been there assessed for taxation at the sum of $40,000. The respondents thereupon proceeded to consider the correction of the assessment, and rejected this sworn statement of the treasurer as false, basing their action in that regard upon the following circumstances, which they set forth in their return to the writ: They state that they had before them a statement, made on behalf of the relator, upon its application for exemption from taxation in 1893, from which it appeared that its total gross assets had been fixed at the sum of $297,824.87, made up of the following items, which, for convenience, will be placed opposite the corresponding items in the statement for 1894:

|  | 1893. | 1894. |
|---|---|---|
| Stock on hand | $97,885 00 | $77,500 00 |
| Machinery | 85,000 00 | 50,000 00 |
| Furniture | 2,000 00 | 500 00 |
| Accounts receivable, book accounts | 36,750 00 | 50,419 07 |
| Cash on hand | 9,523 87 | 3,149 94 |

In respect to this the commissioners, in their return, say:

"As no reason was given or assigned why the stock on hand of the relator should have shrunk between 1893 and 1894 as claimed by the relator, we refused to accept the statement of the relator upon that point as true or conclusive, and we believe and find the fact to be that, as to the value of the machinery, the relator had, in 1893, given us the actual value of the machinery at the sum of $85,000, whereas, in 1894, we believe the fact to be that it had returned merely its estimated value at a forced sale."

It will thus be observed that the only definite exceptions taken to the correctness of the statement are to the valuations of the stock on hand and the machinery. Nowhere does it appear in the return that the respondents had any other information whatsoever before them in respect to the stock or the machinery or the value of either. In fact, the portion of the return which has been quoted clearly shows, both by necessary implication and by actual assertion, that they acted entirely upon a belief inspired by a suspicion excited by the large shrinkages in values within the preceding year of the stock and the machinery. Now, there is no presumption that the state-

ment for 1894 is false because the values there given are less than the values which had been given for similar items in the preceding year. Especially is this true of the stock on hand, which, from the nature of the case, is constantly fluctuating in amount, and dependent upon the condition of business. When business is active and the demand is large, it is natural to expect an increase in the amount of stock, and the converse of the proposition is equally true. In respect to the machinery it may well be that the amount of it has been reduced, or that it has suffered serious deterioration, aside from the average wear through use. It nowhere appears that the relator had any notice whatsoever that the commissioners were not perfectly satisfied with the statement which had been furnished, or that the respondents desired any further information. A sworn statement, such as was furnished in this case, is an examination under oath by the commissioners within the meaning of the statute, and they have no right to arbitrarily reject it as false, or to proceed in disregard of its statements, without evidence or information satisfactorily tending to show that the facts so stated are inaccurate or untrue. While it is true that they may act upon knowledge or information of a reliable character which they have elsewhere acquired, and may upon that find the facts to be otherwise than as stated, and while they are not controlled by the strict rules of evidence which obtain in judicial proceedings, the information that they have, and upon which they act, must be of such a character as to fairly and reasonably support their conclusions. People v. Barker, 141 N. Y. 251, 36 N. E. 196. In the case cited, the court, in its opinion, says:

"These suggestions serve to show that the duty of the tax commissioners is not to subordinate facts, fairly disclosed and uncontradicted, to the influence of presumptions amounting to little more than a guess or possibility, but to deal with them fairly and intelligently. These officers are armed with power to ascertain the truth of answers given to their formal inquiries, and should always do so when the means of investigation are put before them. Here the facts for which they asked, and all that they asked, were furnished under the oath of the relator's treasurer. If they were dissatisfied with his valuation of assets in gross, they could have required them to be given in detail, and so been enabled to judge of the fairness or unfairness of the valuation; but they were not justified in assuming that the treasurer, for the purpose of evading taxation, had falsely underestimated the assets, because of a recent dividend, the declaration of which did not necessarily involve the fact of an unimpaired capital."

This serves to state in a general way the duty resting upon the respondents. Where they are in doubt, they should investigate. Furthermore, in making their return, they should specify the information upon which they acted, in order that the court may be able to determine whether their power was providently exercised. It is not sufficient, in returning a sworn statement made by an officer of the corporation, to state that they had other information which they preferred to accept in determining the amount of the assessment. But in the case at bar there is not even this general statement of information, for they rest the justification of their action merely upon a belief resulting from the comparison of the statements of 1893 and 1894. This, I think, was purely arbitrary. Belief

is not evidence, but a condition of the mind arising from evidence after it has been duly weighed. At least, it may be said that no other belief than this is reasonable or fit to be entertained by an official body acting in a judicial capacity. Furthermore, it will be observed that, while the return gives the statement of assets made in 1893, it is silent upon the subject of the indebtedness of the corporation in that year, so that the court is unable to arrive at any intelligent conclusion upon a comparison of the two statements. If it appeared that the indebtedness of the corporation in 1894 was less than it was in 1893, that fact would satisfactorily explain a reduction in the value of the assets. Furthermore, the statement of 1894, in itself, would seem to explain in part the diminution of the stock on hand, as the item of accounts and bills receivable in 1894 exceeds the corresponding item of 1893 by something over $13,000. It will be observed in this case that none of those features exist which, in the reported cases, have been held by the courts to create a well-founded suspicion and belief that the statement furnished by the corporation was false. This is not a case where the statement of the corporation shows a condition of insolvency, and at the same time that it has been regularly paying dividends and apparently conducting a prosperous business. On the contrary, its capital seems to have been exhausted, the value of its stock is stated to be merely nominal, and no dividends have ever been paid.

The only remaining question to be considered is in respect to the valuation of the real estate. The relator has returned this as it has been assessed in the city of Yonkers for the purposes of taxation, to wit, $40,000. The respondents, however, were not bound to receive this as conclusive, but were entitled to act upon their own judgment in determining the value of this asset. The difficulty, however, with the case is that no intelligent action was taken upon the subject. In their return they state that they "were informed and believed that the real estate in the county of Westchester is assessed for the purpose of taxation at not more than 50 per cent. of the actual value, and that the said real estate proper to be included in the assets of the relator at its actual value was worth, not the assessed value as shown by the relator at $40,000, but not less than $80,000." It seems, according to a dictum of the court of appeals, that judicial notice may be taken of the fact that assessors of real estate throughout the state of New York habitually violate their oaths of office by assessing such property at less than its actual value. People v. Barker, 144 N. Y. 94, 39 N. E. 13. But even this does not go further than by way of apology for holding that the assessed value of the real estate is not conclusive upon an assessment of the corporation in respect to its personalty. The commissioners must still act upon some information or knowledge in respect to the particular real estate, in order to authorize a valuation in excess of the assessed value, and in so doing they have no right whatsoever to assume that the assessors in every town in the county of Westchester assess real estate there at 50 per cent., or any other per centum, of its actual value. The statement contained in the return made upon this subject is made upon information and belief,

but whence the information proceeded, and how reliable it may be, does not appear. Furthermore, in the general form in which it is made, it may fairly be assumed that it states an average which, of course, renders it unfit for application to individual cases, where the actual ratio of assessed to real value can readily be obtained.

But, apart from all this, the attempt to apply such a rule is utterly inadmissible as a guide to honest and intelligent action, and will not be recognized by the courts. The respondents claim that they were entitled to a larger freedom of action in this matter by reason of the failure of the relator to furnish them with a statement of the cost of the real estate. This they were undoubtedly entitled to, as the statute seems to require it; but I do not think that the failure to supply this information gives to the commissioners a free hand to deal with the assessment of the relator as they please, or to arbitrarily assume facts in reference to which they have neither knowledge nor information. They should have requested the officers of the relator to supply the information. This they did not do, and I am, therefore, unable to perceive how this omission affords any justification for their action. I am loath, however, to set aside the assessment until after such examination as should have been made by the respondents has been had. By section 4 of chapter 269 of the Laws of 1880, under which this proceeding is taken, it is provided that, if it should appear to the court that testimony is necessary for the proper disposition of the matter, a referee may be appointed to take such evidence as the court may direct. I have determined to order such an inquiry, and to postpone official action in the proceeding until the coming in of the referee's report. An order will therefore be made appointing such a referee, with directions to take proof of the values, on the second Monday of January, 1894, of the real estate in question, the stock then on hand, and the machinery. I think such an investigation is at least justified by the failure of the relator to supply in the first instance the cost of its real estate, although I do not rest the direction which I have given solely upon this circumstance.

Ordered accordingly.