In re FEDERAL CONTRACTING CO.

FAIRBANKS STEAM SHOVEL CO. v. WILLS.

(Circuit Court of Appeals, Seventh Circuit.   January 14, 1914.)

No. 2047.

1. COURTS (§ 24*)—JURISDICTION—SUBMISSION TO JURISDICTION.
Where a bankrupt, after petition filed but before adjudication, brought suit against a mortgagee of the bankrupt in a district court having no jurisdiction over the subject-matter, the mortgagee, answering to and contesting the merits, thereby consented to jurisdiction.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 76–78; Dec. Dig. § 24.*

Jurisdiction of federal courts in suits relating to bankruptcy, see note to Bailey v. Mosher, 11 C. C. A. 313.]

2. BANKRUPTCY (§ 279*)—ACTIONS BY TRUSTEES—RIGHT TO SUE—ADMISSIONS.
A suit by a trustee in bankruptcy against a mortgagee of the bankrupt, to recover possession of property taken by the mortgagee under an alleged invalid mortgage, is an independent and plenary suit by the trustee as representative of the bankrupt and the general creditors, and the mortgagee, answering to the merits, thereby admits that the trustee has capacity to sue, and the mortgagee, if desiring to question capacity, should file a plea raising the issue.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 419–424; Dec. Dig. § 279.*]

3. BANKRUPTCY (§ 152*)—RIGHTS OF TRUSTEE—MORTGAGEES OF THE BANKRUPT.
Under Bankr. Act (Act July 1, 1898, c. 541, 30 Stat. 565 [U. S. Comp. St. 1901, p. 3451]) § 70, as amended by Act Feb. 5, 1903, c. 487, § 16, 32 Stat. 800 (U. S. Comp. St. Supp. 1911, p. 1511), defining title to property of the trustee of a bankrupt, the right of a trustee in bankruptcy intervenes as of the date of the filing of the petition in bankruptcy, unaffected by any subsequent act of a mortgagee of the bankrupt in taking possession, unless the mortgage, valid if duly executed and recorded, was acknowledged and recorded according to the statutes of the state of the residence of the bankrupt.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 194; Dec. Dig. § 152.*]

4. CORPORATIONS (§ 52*)—DOMICILE—PRINCIPAL OFFICE—PLACE OF BUSINESS.
Where a corporation organized under Rev. St. Ill. 1913, c. 32, § 1 et seq., stated in its articles of incorporation that its principal office was in Chicago, and thereby complied with section 2, and no attempt was made to comply with section 50 et seq., authorizing a change of place of business, the corporation's residence was at Chicago.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 140–150; Dec. Dig. § 52.*]

5. ACKNOWLEDGMENT (§ 19*)—AUTHORITY TO TAKE—TERRITORY OF OFFICER.
Under Rev. St. Ill. 1913, c. 95, § 2, providing that chattel mortgages in counties having over 200,000 must be acknowledged before enumerated of-

ficers of the district wherein the mortgagor resides, an acknowledgment, executed by a corporation residing in Chicago, before an officer residing elsewhere, is insufficient, and the mortgage is invalid as against the corporation's trustee in bankruptcy.

[Ed. Note.—For other cases, see Acknowledgment, Cent. Dig. §§ 112–121; Dec. Dig. § 19.*]

Appeal from the District Court of the United States for the Southern Division of the Southern District of Illinois; J. Otis Humphrey, Judge.

In the matter of bankruptcy proceedings of the Federal Contracting Company, bankrupt. From an order adjudging that a chattel mortgage, executed by the bankrupt to the Fairbanks Steam Shovel Company, was invalid as against William V. Wills, trustee in bankruptcy, the Fairbanks Steam Shovel Company appeals. Affirmed.

From the agreed statement of facts it appears that on March 25, 1913, Federal Contracting Company hereinafter termed the bankrupt, was adjudicated a bankrupt in the District Court of the United States for the Southern District of Illinois, Southern Division, upon petition filed December 30, 1912. Prior to such adjudication, and on September 6, 1907, the bankrupt gave a written order to appellant for one two-yard dredge complete, describing the machinery in detail, to be delivered at Beardstown, Ill., price $10,500, for which sum the bankrupt agreed to give its notes, and, at the time and place of delivery, "to give in security of said notes a first mortgage on the above-named machinery," and further agreed in writing that "the title to the goods above ordered shall not pass until paid for in cash or until notes given for the same are fully paid and discharged, but shall rest only in you and the property shall be yours until that time." The order was accepted, the dredge delivered, and the notes and a chattel mortgage securing the same given to appellant as agreed. The mortgage was acknowledged and recorded in Cass county, Ill. The notes not having been paid at maturity, new notes aggregating $12,215.30 were, on June 8, 1912, executed and delivered to appellant by the bankrupt for the balance due, and some additional indebtedness for repairs furnished, and a new chattel mortgage was also executed and delivered upon the dredge by the bankrupt to secure the new notes, which mortgage was acknowledged and recorded in Cass county aforesaid. On March 6, 1913, the bankrupt having defaulted in the payment of said notes, the appellant took possession of the said dredge, and advertised it for sale pursuant to the terms of the chattel mortgage and the statutes of Illinois; appellant not being at that time advised of the bankruptcy proceedings. The amount then due upon said notes was the sum of $11,215.30 and accrued interest.

On March 28, 1913, the bankrupt filed its petition in said District Court, setting up that appellant had taken possession of said dredge under and by virtue of said chattel mortgage, and had advertised the same for sale as in said chattel mortgage provided, and alleging, further, that said chattel mortgage was invalid as against the rights of the trustee to be thereafter appointed, that unless such sale were restrained, the dredge would be sold at a sacrifice, and that the said sale should be enjoined. Thereupon the court entered a temporary restraining order. Appellant, without questioning the jurisdiction of the court, appeared, and in its answer alleged that the chattel mortgage was valid, and admitted that it had taken and still had possession of the dredge under the chattel mortgage provisions. It further answered that it had thereby perfected its title thereto prior to the adjudication in bankruptcy, and asked that the injunction be dissolved. On April 18, 1913, no trustee having yet been appointed, it was ordered by the court, on the stipulation of the parties, that the sale might proceed, and that if appellant bought in the dredge, it should hold it subject to the right of the trustee to take possession thereof, should the cause be decided adversely to appellant. The trustee was appointed on April 22, 1913, and substituted for said bankrupt in said cause. Appellant

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

212 F.—44

purchased the dredge at the sale. Thereupon the cause was referred to the referee in bankruptcy as a special master to take proofs and report the same and his conclusions as to the law to the court. He thereafter made report, finding that the chattel mortgage was void as to the trustee for the reason that it was not acknowledged and recorded in Cook county, Ill., the residence of the bankrupt, that the title of the trustee attached to the dredge as of the date of filing the petition in bankruptcy, and was not affected by appellant's taking possession after that date. The special master thereupon recommended that the motion to dissolve the injunction be denied, and that an order be entered directing the appellant to surrender the dredge to the trustee. Appellant thereupon filed its exceptions to the report, and prayed for a review and revision by the District Court. That court overruled the exceptions and approved the special master's report, from which order this appeal was taken.

The errors assigned are, (1) that the court found that the residence of the bankrupt was in Cook county, Ill.; (2) that the court found that the title of the trustee attached as of the date of filing the petition in bankrupcy, and was prior to that of appellant; (3) that the court refused to dissolve the injunction and made the same perpetual. Other facts appear in the opinion.

John A. Bellatti and Walter Bellatti, both of Jacksonville, Ill., for appellant.

Elbert C. Ferguson, of Chicago, Ill., William Mumford, of Pittsfield, Ill., and John C. Burchard, of Chicago, Ill., for appellee.

Before BAKER, SEAMAN, and KOHLSAAT, Circuit Judges.

KOHLSAAT, Circuit Judge (after stating the facts as above). On the hearing of the appeal herein, appellant orally urged upon the court the question of the right of the trustee to bring and maintain this cause in the District Court, for the reasons:

[1] First. That the District Court had no jurisdiction over the subject-matter of this suit under the decision of the Supreme Court in Harris v. First National Bank, 216 U. S. 382, 30 Sup. Ct. 296, 54 L. Ed. 528. With regard to this objection, it suffices to say that appellant's answer to the merits, and its acts in contesting the merits during the pendency of the suit, amount, beyond question, to a consent to such jurisdiction. Whether under clauses 23a and 23b, construed together with clause 70e as amended in 1903, consent to jurisdiction of the District Court is required need not therefore be considered.

[2] Second. That the District Court, by its finding in the present suit that the bankrupt's principal office and principal place of business under the Illinois corporation and recording statutes was in the Northern District of Illinois, in legal effect found that the District Court of the Southern District of Illinois, sitting in bankruptcy, had no jurisdiction under the national bankruptcy statute to make the adjudication and appoint the trustee. This present cause is an independent and plenary suit by the trustee (who adopted the bill of complaint filed by the bankrupt in anticipation of the appointment of the trustee), professing to act in the right of the bankrupt mortgagor and its general creditors against appellant as mortgagee to recover possession of property taken by appellant under an alleged invalid mortgage. This suit might therefore have been brought as well in a state court. But wherever brought, if appellant desired to challenge the right of the trustee to sue as representative of the bankrupt and its

general creditors, appellant should have raised the issue in this suit by a proper plea. Appellant's answer to the merits of the question of title and right of possession of the property was an admission of the trustee's capacity to sue. 31 Cyc. 171, 172. If appellant had filed such a plea, it would then, and only then, have become necessary to consider (with the bankruptcy record introduced into this cause as evidence, and if the bankruptcy record showed the question in a way to be determined collaterally) whether principal office and principal place of business inevitably have identical meanings under the Illinois corporation and recording statutes, and under the National Bankruptcy Act. As the record stands, appellant will not be heard to question the right of the trustee to maintain the present suit.

[3] While, upon the merits, other points were made by the trustee, the special master properly held that the only one necessary to be considered was whether the chattel mortgage was acknowledged and recorded according to the statutes of Illinois. Unless it was, the rights of the trustee would intervene as of the date of filing of the petition in bankruptcy, and would not be affected by the subsequent act of the mortgagee in taking possession. Mueller v. Nugent, 184 U. S. 1, 22 Sup. Ct. 269, 46 L. Ed. 405; In re Rodgers, 125 Fed. 169, 60 C. C. A. 567, decided by this court; section 70 of Bankruptcy Act as amended Feb. 5, 1903, Supp. of 1911, U. S. Comp. Stat. of 1901, p. 1511; Everett v. Judson, 30 Am. Bankr. Rep. p. 1, 228 U. S. 474, 33 Sup. Ct. 568, 57 L. Ed. 927, 46 L. R. A. (N. S.) 154, decided by United States Supreme Court April, 1913; Toof v. City Nat'l Bank, 30 Am. Bankr. Rep. 79, 206 Fed. 250, 124 C. C. A. 118, decided by United States Circuit Court of Appeals June, 1913; Acme Harvester Co. v. Beekman Lumber Co., 222 U. S. 300, 32 Sup. Ct. 96, 56 L. Ed. 208.

[4] Section 2 of chapter 95 of mortgages of the statutes of Illinois provides that chattel mortgages in counties having over 200,000 population, if the mortgagee is a resident of the state at the time, must be acknowledged before officers therein enumerated, in the town, precinct, district, or county wherein the mortgagor resides. The articles of incorporation of the bankrupt stated that the location of bankrupt's principal office was "in the city of Chicago, in the county of Cook and state of Illinois," and the commissioners in their report to the Secretary of State set out—

"that the post office address of the business office of said company is at number —— Park Hotel * * * in the city of Beardstown in the county of Cass and state of Illinois."

The special master found that the charter was filed for record and recorded in Cass county, Ill.; that all but two of the stockholders' and directors' meetings were held at Beardstown, and that after a short time no office was maintained in Chicago, but that the bankrupt did maintain an office at Beardstown, where it kept its records, books, etc.; that its stationery carried the address of Beardstown, and that address was given in its reports to the Secretary of State and collector of internal revenue as the location of its principal office, and that for all practical purposes the principal office was at Beardstown when

the mortgage was given in June, 1912. Upon this state of facts the special master found, as above stated, that the bankrupt's residence was at Chicago, Ill.

This finding of the special master is in accord with the weight of authority. By section 50 of the Illinois Corporation Act, it is provided:

"That whenever the board of directors, managers or trustees of any corporation * * * hereafter organized by virtue of any law of this state, may desire to change * * * the place of business * * * they may call a special meeting of the stockholders of such corporation * * * for the purpose of submitting to a vote of such stockholders * * * the question of such change of place of business."

Section 51 prescribes the notice—not less than 30 days, and the manner in which it shall be given, while section 52 provides that such change must be effected by a two-thirds vote of all the stock of the corporation. Section 53 provides that when such change is voted, a certificate thereof, verified by the affidavit of the president and under seal of said corporation, shall be filed in the office of the Secretary of State and recorded in the county where the principal business of such corporation is located, whereupon the change as to the place of business, etc., shall become effective. Section 54 requires publication of such change to be made in a newspaper published in or nearest the county in which the principal office is located.

Here no attempt was made to comply with the statute in the above respect.

While section 2 of the corporation act uses the language, "the location of the principal office," and the language of section 50 of said act is to change the "place of business," we are of the opinion that the two are synonymous as used in the statute.

It has been held that the domicil of a corporation is that place where its principal office is located. Every corporation has a residence within the meaning of the word as used in the Practice Act, where its principal office or place of business is established. Jenkins v. California Stage Co., 22 Cal. 537.

In Connecticut, etc., R. R. Co. v. Cooper, 30 Vt. 476, 73 Am. Dec. 319, it is said that, where a corporation is not located by the terms of its charter, its residence and location are regarded as being in the place where it keeps its principal office and does its corporate business.

It was held in Western Transportation Co. v. Scheu, 19 N. Y. 408, that a corporation had its domicil for the purpose of taxation in the city or town in which the principal office for managing the affairs of the company was located, as evidenced by its charter.

The Supreme Court of the United States said, in Galveston, etc., Ry. Co. v. Gonzales, 151 U. S. 504, 14 Sup. Ct. 401, 38 L. Ed. 248, that the question of inhabitancy of a corporation must be determined, not by the residence of any particular officer, but by the location of the principal offices—where its books are kept and its corporate business is transacted, even though it may transact its most important business elsewhere, citing Conn., etc., R. R. Co. v. Cooper, supra.

In Ex parte Schollenberger, 96 U. S. 377, 24 L. Ed. 853, the court

decided that a corporation can have its legal home only at the place where it is located by or under the authority of its charter.

It was early decided in Illinois that:

"The residence of a corporation, if it can be said to have a residence, is necessarily where it exercises corporate functions. It dwells in the place where its business is done. It is located where its franchises are exercised. * * * It has voluntarily established its residence in Cook county. It has there located its chief business office." Bristol v. C. & A. R. R. Co., 15 Ill. 436.

A chattel mortgage covering property in Chenoa, Ill., was held to have been properly acknowledged in St. Louis, Mo., that being the home office of the company. Hewitt v. General Electric Co., 164 Ill. 420, 45 N. E. 725.

A statement in a certificate of incorporation as to the location of the corporation's principal place of business is conclusive on the corporation. People v. Barker, 5 App. Div. 227, 39 N. Y. Supp. 88.

The general act under which a corporation was organized granted the power to "change the location of its principal office." Held, that the term "principal office" was intended to include "principal place of business," and such a change of the place of business to another city in the state was authorized. Bernstein v. Kaplan, 150 Ala. 222, 43 South. 581; C., D. & V. R. R. Co. v. Bank of North America, 82 Ill. 493–496, citing Bristol v. Chicago & Aurora R. R. Co., 15 Ill. 436. See, also, First National Bank v. Wilcox, 72 Wash. 473, 130 Pac. 756, 131 Pac. 203; Clark & Marshall's Private Corporations, p. 363; sections 464 and 496, Thompson on Corporations (2d Ed.).

In Crofut v. Brooklyn Ferry Co., 36 Barb. (N. Y.) 201, it is said that the certificate of incorporation of a company, together with its acts in the exercise of its franchise, show where it is established. The place where its books are kept, where the office of its attorney is, where its directors meet, or where it is assessed for personal property, are not proof conclusive of the locus of its establishment.

[5] The court was right in approving the report of the special master and holding that the residence of the bankrupt was at Chicago, that therefore the chattel mortgage in suit, having never been properly acknowledged, was invalid as against the trustee of the bankrupt, and in refusing to dismiss the temporary injunction and ordering the dredge to be turned over to the trustee.

The decree of the District Court is, therefore, affirmed.