# MEYERS et al., Respondents v. LUX et al., Appellants

## (75 N.W.2d 533)

(File No. 9498.   Opinion filed March 13, 1956)

**D. G. Grieves,** Winner, for Appellants.

**G. F. Johnson,** Gregory, **C. E. Kell,** White River, for Respondents.

ROBERTS, P. J.   Plaintiffs brought this ˊaction to enjoin construction by defendants as directors of the Cherry-Todd Electric Cooperative, Inc. of an office building in Valentine, Nebraska, and for other relief.   A temporary injunction was granted and after trial the court rendered and entered judgment enjoining defendants from maintaining the principal place of business in Valentine and the erecting of the proposed office building and also requiring

them forthwith to issue to the plaintiff Wise a membership certificate in the cooperative. From the judgment, an appeal has been taken to this court by defendants.

The material facts necessary to a decision are not in dispute and are as follows: On September 17, 1948, articles of conversion of the Cherry-Todd Electric Cooperative, Inc., a non-profit and non-stock corporation, were filed under the provisions of Chap. 33, Laws 1947, SDC Supp. 11.22 known as the "Electric Cooperative Law". This act provides that a South Dakota corporation supplying or having the power to supply electric energy may be converted into a cooperative by complying with its requirements and that articles of conversion shall be deemed to be articles of incorporation. SDC Supp. 11.2220. The assets of the old corporation became the assets of the cooperative and stockholders of the old automatically became members of the converted corporation. Article VI of the articles of conversion provided that the "address of the principal office of the cooperative is Mission, South Dakota". An amendment of this article, filed March 3, 1950, provides that the "address of the principal office of the Cooperative is Mission, South Dakota. A business office may be located at Valentine, Nebraska, and any meeting of the directors may be held either at said principal office or at said office in the State of Nebraska. The books and records of this corporation may be kept at either office as the directors may find convenient". The by-laws of the cooperative were at the same time amended to provide that monthly meetings of the board of directors may be held either in Todd County, South Dakota, or Cherry County, Nebraska, as the board shall by resolution provide.

The defendant board called for bids for the construction of an office building in Valentine. The board by a resolution adopted on February 20, 1954, accepted the bid of the Fricke Construction Company subject, however, to the approval of the administrator of the rural electrification administration, Washington, D. C., and the members of the cooperative. A demand in writing by a requisite number of members had previously been made for a special meeting for the purpose of voting upon the question of whether or not an office building be erected in Valentine or elsewhere.

A special meeting of members was held in Mission, South Dakota, on April 10, 1954. There were 129 persons living in or near Mission who were qualified to become members and their applications for membership had been pending for more than six months prior to the meeting. The members voted on three separate questions. On the question "Shall the qualified individuals in Mission be accepted at this meeting as members of the cooperative?", 154 members voted yes and 155 members voted no. There were 192 affirmative and 117 negative votes on the question "Shall the cooperative erect a permanent office building?". On a vote being taken on the third question "Shall the cooperative business office be moved?", 84 members voted yes and 216 members voted no.

Many questions or different phases of the same question are discussed in the briefs, but the crucial question before us is whether it was mandatory upon the cooperative to admit to membership the 129 applicants.

SDC Supp. 11.2202 provides that a cooperative, non-profit, membership corporation may under the "Electric Cooperative Law" be organized "for the purpose of supplying electric energy and promoting and extending the use thereof, in rural areas." SDC Supp. 11.2223 provides that a "cooperative shall be operated on a non-profit basis for the mutual benefit of its members and patrons." SDC Supp. 11.2204(4) provides that a cooperative shall have power to "dispose of electric energy to its members, to governmental agencies and political subdivisions, and to other persons not in excess of ten per centum of the number of its members, and, provided, further, that a cooperative which acquires existing electric facilities may continue service to persons, not in excess of forty per centum of the number of its members, who are already receiving service from such facilities, without requiring such persons to become members but such persons shall have the right to become members upon such terms as may be prescribed in the by-laws". SDC Supp. 11.2209 provides that "Each incorporator of a cooperative shall be a member thereof, but no other person may become a member thereof unless such other person agrees to use electric energy furnished by the the cooperative when it is

made available through its facilities. * * * The by-laws may prescribe additional qualifications and limitations in respect of membership."

The by-laws of the cooperative provide: "Any person, firm, association, corporation, or body politic or subdivision thereof may become a member of Cherry-Todd Electric Cooperative, Incorporated, (hereinafter called the 'Cooperative') by: (a) Making a written application for membership therein; (b) agreeing to purchase from the Cooperative electric energy as hereinafter specified; (c) agreeing to comply with and be bound by the articles of incorporation and by-laws of the Cooperative and any rules and regulations adopted by the Board of Directors; and (d) paying the membership fee hereinafter specified; provided, however, that no person, firm, association, corporation or body politic or subdivision thereof shall become a member unless and until he or it has been accepted for membership by the Board of Directors or the members. No member may hold more than one membership in the Cooperative, and no membership in the Cooperative shall be transferable, except as provided by these by-laws. At each meeting of the members held subsequent to the expiration of a period of six months from the date of incorporation of the Cooperative, all applications received more than ninety days prior to such meeting which have not been accepted or which have been rejected by the Board of Directors shall be submitted by the Secretary to such meeting and, subject to compliance by the applicant with the requirements hereinabove set forth, any such application may be accepted by vote of the members. The Secretary shall give each such applicant at least ten days written notice of the date of the members' meeting to which his application will be submitted and such applicant, shall be entitled to be present and heard at the meeting."

■ Defendant directors on behalf of themselves and the cooperative argue that the refusal of membership is a matter within the control of the cooperative having authority to accord or withhold membership. In 18 C.J.S., Corporations, § 478, the general rule pertaining to the granting or rejection of memberships is stated as follows: "A corporation has inci-

dental power to admit new members. In the absence of charter or statutory restrictions, the matter is left wholly to its determination. * * * A court has no power to compel a corporation to admit a person to membership against the will of those whose consent is, according to the charter or an authorized by-law essential to the eligibility of applicant. In determining whether a vote of admission is necessary, reference must be had to the provisions and spirit of the charter, and when the charter is silent, to the particular nature and purpose of the corporation." See also 7 C.J.S., Associations, § 23; 12 Fletcher Cyclopedia, Corporations, § 5687.

■ These electric companies are cooperative enterprises and not ordinary business corporations for profit. They have the right with the consent of municipalities and counties to occupy streets and highways for the construction and maintenance of lines for the transmission of electricity, SDC Supp. 11.2227 and are conferred with the power of eminent domain, SDC Supp. 11.2204(9), which is a right of the state or of those to whom the power has been lawfully delegated to condemn private property for public use. A cooperative thus has some of the attributes of a public service company and is organized for the express "purpose of supplying electric energy and promoting and extending the use thereof, in rural areas."

■ The statute as we have observed places certain restrictions on admissions to membership. The last sentence of Section 11.2209 makes it clear that such restrictions are not exclusive. It provides that by-laws may prescribe "additional qualifications and limitations in respect of membership". A cooperative has the undoubted right to set up reasonable standards in its by-laws in harmony with and in addition to those prescribed by statute by which eligibility for membership shall be determined and prescribe the formalities by which members may be admitted.

■ As is stated in 18 C.J.S., Corporations, § 189c, the "By-laws of a corporation must be consistent both with the terms and with the spirit and intent of the charter or governing statute, and where they are contrary to or inconsistent with the charter, articles of association or incor-

poration, or governing statute, they are ultra vires and void, even though they may have been unanimously assented to by the stockholders or members." That rule was applied by this court in holding, in Sagness v. Farmers Co-operative Creamery Co., 67 S.D. 379, 293 N.W. 365, that under the provisions of SDC 11.0104(6) a cooperative corporation had the right to make by-laws not inconsistent with existing law.

■ The appellants interpret the by-laws to mean that the granting or refusal of an application of one who does not come within a statutory restriction is a matter entirely within the control of the cooperative acting through its board of directors or members. The statute does not provide for admission by vote of the directors or members, but confines the power to the adoption of by-laws prescribing qualifications and limitations. This right must be exercised within reasonable limitations. If the by-law in question is susceptible of different constructions it should be given that construction as to make it harmonize with the governing statute.

■ The trial court construed the by-laws to require the directors or members to admit qualified applicants. Concerning the interpretation of by-laws prescribing the mode of admission to membership, the court in Porterfield v. Black Bill & Doney Parks Water Users' Association, 69 Ariz. 110, 210 P.2d 335, 338, said: "The authority vested in the board of directors is merely to determine whether the applicant possesses the qualifications prescribed in the constitution and by-laws of the association. If he does it is mandatory upon the board to admit him to membership. If he does not, he is not entitled to such membership." The problem in that case was closely analogous. We think that the ruling of the trial court was correct. In other words, the provisions of the statute and by-laws prescribe qualifications for membership and limitation as to the mode of admission and if an applicant is elegible thereunder and presents a proper application the cooperative acting either through its board of directors or members has not the right to deny him membership.

■ Nor is there any merit to the contention of appel-

lants that the evidence is insufficient to sustain the finding of the court that there were a sufficient number of applicants in attendance at the meeting on April 10, 1954, to have changed the result of the vote on the question whether or not the cooperative erect an office building if they had been permitted to vote.

■ This brings us to the question of the location of the principal office of the cooperative. The certificate of incorporation as we have indicated named Mission, South Dakota, as the address of the principal office. Under the Electric Cooperative Law, SDC Supp. 11.2207, every corporation organized thereunder is required in its articles of incorporation to state the address of its principal office. The statute, in other words, contemplates that such a corporation have a situs or place of business as its domicile. We treat the words "principal office" and "principal place of business" as synonymous. People ex rel. Knickerbocker Press v. Barker, 87 Hun 341, 34 N.Y.S. 269, 270; In re Federal Contracting Co., 7 Cir., 212 F. 688. The statute, SDC Supp. 11.2216, grants the authority to change the location of the principal office by filing with the secretary of state a properly executed certificate reciting such change, and the location thereof can be changed only by substantially complying with these requirements.

■ The place where the governing power is exercised by the directors and principal officers and where the books and records are kept is generally considered the principal place of business. Mullen v. Northern Accident Ins. Co., 26 S.D. 402, 128 N.W. 483. Clearly, there can be under the statute only one principal office or place of business. Appellants contend that a cooperative may for the more convenient transaction of its business establish a branch office and that was the purpose of the amendment of the articles filed March 3, 1950. Whether this be true or not, we need not inquire. Under the admitted facts, the cooperative to the time of judgment from which defendants appealed has maintained no office in Mission and no corporate business other than the holding of meetings of members has been there transacted. The statute cannot be so narrowly construed as to require simply the holding of meetings

of members at the place designated in the articles of incorporation. The trial court did not err in its ruling with respect to location of the principal place of business.

It is not necessary at this time to consider other questions of law presented.

The judgment appealed from is affirmed.

SMITH and SICKEL, JJ., concur.

RUDOLPH and RENTTO, JJ., dissent.

RUDOLPH, J. (dissenting). Under SDC Supp. 11.2204(4) the 129 applicants for membership in the Cooperative could not be required to become members but they "have the right to become members upon such terms as may be prescribed in the by-laws." The by-laws provide that no one shall become a member unless accepted by the Board of Directors, and all applications for membership not acted upon or rejected by the Board of Directors shall be submitted to a vote of the members of the Cooperative. The 129 applicants were not accepted by the Board of Directors or the members and unless this by-law is invalid they have no right to membership.

This Cooperative is a non-profit membership corporation. SDC Supp. 11.2202. By express statutory provision the by-laws may prescribe qualification and limitations in respect of membership. SDC Supp. 11.2209. The by-law referred to above limits the membership to those accepted by the Board of Directors or members. This limitation is not inconsistent with the statute but seems to me to be in accord therewith, and within its contemplation. The by-law not being in conflict with the statute the facts here presented fall squarely within the rule which has general acceptance and is well stated in the Illinois case, W. G. Press & Co. v. Fahy, 313 Ill. 262, 145 N.E. 103, 105, as follows:

> "A corporation not for pecuniary profit has a right to adopt rules prescribing the only mode in which membership therein can be maintained, and no one can rightfully claim membership who has not been admitted in the mode thus prescribed; nor has a court of equity any power to compel the corporation to issue a certificate of membership to an applicant who has not complied with such mode."

The charter and by-laws referred to in the Arizona case cited in the majority opinion differ so materially from the statute and by-laws before us that the case is not authority in this proceeding.

RENTTO, J., concurs in this dissent.