Dear President Taylor,
¶ 0 This office has received your letter asking for an Opinion addressing, in effect, the following questions:
1. May a rural electric cooperative charge differentmembership fees to members within the same class depending uponwhen the member joined the cooperative?
 2. Are membership fees which are refundable upon terminationof membership and which are subject to being offset against anyamounts owing to the cooperative upon termination of membershipreally a form of deposits? If so, how are they to be treated bythe cooperative?
 3. May a rural electric cooperative use membership fees ordeposits to meet financial requirements of the Rural UtilityServices Administration?
¶ 1 Rural electric cooperatives ("RECs" or "cooperatives") are "[c]ooperative, nonprofit, membership corporations" organized under the Oklahoma Rural Electric Cooperative Act (the "RECA"),18 O.S. 1991, §§ 437[18-437] to 437.29. The RECA was enacted as a result of the stimulus provided by Congress in the Rural Electrification Act of 1936, 7 U.S.C.S. §§ 901-918 (Law. Co-op. 1992 Supp. 1995), to provide the financing for the development of electric energy in rural areas of the country. 29 C.J.S.Electricity § 10(2) (1965). Under the RECA, RECs were conceived "for the purpose of supplying electric energy and promoting and extending the use thereof in rural areas." 18 O.S. 1991, §437.1[18-437.1]. With the exception of the initial incorporators, membership is restricted to those who "agree to use electric energy furnished by the cooperative." Id. § 437.7(a).
¶ 2 RECs are given broad powers under the RECA, including the authority "[t]o do and perform any and [all] other acts and things, and to have and exercise any and all other powers which may be necessary, convenient or appropriate to accomplish the purpose for which the cooperative is organized." 18 O.S. 1991, §437.2[18-437.2](n). The RECA provides further that:
 This Act shall be construed liberally. The enumeration of any object, purpose, power, manner, method, or thing shall not be deemed to exclude like or similar object, purposes, powers, manner, methods or things.
18 O.S. 1991, § 437.29[18-437.29].
¶ 3 Within this broad realm of statutory authority, the specific authority of an individual REC is determined by its by-laws. The RECA provides that:
 [B]y-laws shall be adopted, amended or repealed by [the cooperative's] members. The by-laws shall set forth the rights and duties of members and trustees and may contain other provisions for the regulation and management of the affairs of the cooperative not inconsistent with this act or with its articles of incorporation.
18 O.S. 1991, § 437.6[18-437.6].
¶ 4 "The by-laws may prescribe additional qualifications and limitations in respect to membership." Id. § 437.7(a).
 I.
¶ 5 In light of the RECA's broad grant of authority to RECs and its admonition for liberal construction, a REC may charge different membership fees to members within the same class depending upon when the member joined the cooperative, provided three conditions are satisfied: (1) charging different membership fees is "necessary, convenient or appropriate" to "supplying electric energy and promoting and extending the use thereof in rural areas," 18 O.S. 1991, § 437.2[18-437.2](n) § 437.1; (2) the terms and conditions of membership provided in the REC's by-laws are adhered to; and (3) such differing membership fees have a reasonable basis in fact and are not arbitrary or capricious. A determination of whether these conditions have been met turns on facts rather than law and is beyond the scope of this opinion.74 O.S.Supp. 1995, § 18b[74-18b](A)(5). However, the following discussion offers some insight into the factors to be considered.
 Purpose
¶ 6 There is no Oklahoma case law defining the boundaries of what is "necessary, convenient or appropriate" to "supplying electric energy and promoting and extending the use thereof in rural areas." 18 O.S. 1991, § 437.2[18-437.2](n) § 437.1. However, "[w]ords used in any statute are to be understood in their ordinary sense, except when a contrary intention plainly appears." 25 O.S. 1991, § 1[25-1]. No such contrary intention is evident in the RECA. Given the broad sweep of Section 437.2(n) and the Section 437.29 admonition of liberal construction, it appears that the charging of different membership fees would be permissible, in general, unless it could be shown that such action frustrates or impedes the use or promotion of electric energy in rural areas.
 By-Laws
¶ 7 The RECA's only express requirement for membership is that the member agrees to use the electricity furnished by the REC.18 O.S. 1991, § 437.7[18-437.7](a). The RECA allows the by-laws to prescribe further requirements, including the payment of membership fees. Basically, the by-laws and an accepted application for membership constitute a binding contract between the REC and the member. King v. Farmers Electric Cooperative,246 P.2d 1041, 1045 (N.M. 1952). Therefore, a member who agrees in his application to be bound by the by-laws will be bound thereby, so long as such by-laws are reasonable. Id. Thus, if the by-laws of a particular REC allow different membership fees to be charged members of the same class depending upon when the member joined, and if the by-laws are reasonable, a member would be bound by such by-laws unless and until such by-laws are amended by a vote of the membership.
 Reasonable Basis
¶ 8 A member will not be bound, however, by by-laws that are not reasonable, and by-laws that arbitrarily discriminate cannot be deemed reasonable. See, e.g., McCrady v. Western FarmersElectric Cooperative, 323 P.2d 356 (Okla. 1958). Thus, for example, while a REC has the right to establish, through its by-laws, reasonable standards for membership in addition to those prescribed in the statute, it may not arbitrarily or unreasonably exclude from membership one within the territory it serves. Id.
at 361. See also Capital Electric Power Association v.McGuffee, 83 So.2d 837, 841 (Miss. 1955) (noting that Mississippi's statute prohibits by-law terms and conditions that are discriminatory).
¶ 9 In Meyers v. Lux, 75 N.W.2d 533 (S.D. 1956), decided under a statute with the same language as 18 O.S. 1991, §437.7[18-437.7], the court recognized that the by-laws must be consistent with both the terms and with the spirit and intent of the statute, and if they are inconsistent or contrary therewith, such by-laws are ultra vires and void. Meyers, 75 N.W.2d at 536. As in Oklahoma, the purpose of the South Dakota statute is to allow the creation of cooperative, nonprofit, membership corporations "for the purpose of supplying electric energy and promoting and extending the use thereof, in rural areas." Id. at 535.
¶ 10 It would be inconsistent with the intent of Oklahoma's RECA if a REC practices arbitrary or unjust discrimination.Dairyland Power Cooperative v. Brennan, 82 N.W.2d 56, 62 (Minn. 1957) (citation omitted) (noting that implicit in the purpose of promoting and extending the use of electric service in rural areas is the obligation "to make membership available, without arbitrary or unreasonable limitations thereon, to all coming within the purview of that purpose"); see also Public ServiceCompany of Oklahoma v. Caddo Electric Cooperative, 479 P.2d 572,580 (Okla. 1971) (stating that "[i]t was never intended under State and Federal law that persons residing in rural areas would be deprived of the equal protection of the law"). Thus, while a REC may charge its members different fees if authorized in its by-laws, it may not do so where such disparate treatment has no reasonable basis in fact or in an arbitrary or discriminatory manner.
 II.
¶ 11 Your second question asks whether membership fees are customer deposits, and if so, how they should be treated by the REC. Unlike membership fees, the treatment of customer deposits by electric utilities, including RECs, is specifically addressed by the rules and regulations promulgated by the Oklahoma Corporation Commission (the "Commission"). OAC 165:35-19-10 to -11. These rules specifically state that customer "[d]eposits shall not include membership fees in cooperatives." OAC165:35-19-10(q). In the construction of statutes the word "shall" is interpreted as implying a command or mandate. Sneed v.Sneed, 585 P.2d 1363 (Okla. 1978). Rules of the Commission have the force and effect of law. 75 O.S. 1991, § 308.2[75-308.2](C).
¶ 12 Clearly, the language of OAC 165:35-19-10(q) prohibits a REC from commingling membership fees with its customer deposits and excludes membership fees from the requirements of the rule for deposits. There are no comparable Commission rules or other statutes requiring a REC to treat membership fees in the same way as customer deposits are treated under OAC 165:35-19-10. Thus, RECs are not required to treat membership fees like customer deposits. Since membership fees are not deposits, their manner of treatment is a proper subject for the by-laws.
 III.
¶ 13 Your third question concerns the use of membership fees or deposits to meet the financial requirements of the Rural Utility Services Administration ("the RUSA"). The RUSA, and its predecessor the Rural Electrification Administration, was created by Congress under the Rural Electrification Act of 1936 (the "Act"), 7 U.S.C.S. §§ 901-918 (Law. Co-op. 1992 Supp. 1995), for the purpose of promoting electric service in rural areas by authorizing loans for various purposes to rural residents who qualify under the Act. The Act contains no requirement for, nor is there any prohibition against, a REC's use of membership fees or customer deposits to meet the financial requirements of the RUSA.
¶ 14 Section 904 of the Act commits to the discretion of the RUSA the making of loans and the criteria and qualifications the applicant must meet. Alabama Power Co. v. Alabama ElectricCooperative, 394 F.2d 672, 675 (5th Cir. 1968). The regulations issued by the Department of Agriculture concerning financial criteria of borrowers, codified at 7 C.F.R. pts. 1700-94 (1995), do not list membership fees or deposits as financial requirements. In fact, these regulations suggest that the financial requirements of the RUSA may vary from loan to loan and are a matter of negotiation. See, e.g., 7 C.F.R. § 1717.302(a) ("Loan contract means the agreement . . . between a borrower and RUS[A] providing for loans made or guaranteed pursuant to the RE Act"). The courts have found that Congress did not intend the loans made by this agency should be reviewable in the courts.Alabama Power, 394 F.2d at 674.
¶ 15 Under Oklahoma law there is similarly no requirement for, nor is there any prohibition against, a REC's use of membership fees or deposits to meet the financial requirements of the RUSA. However, under OAC 165:35-19-10(j), RECs are required to annually refund (with interest) the deposits of residential customers who have satisfactorily paid their bills for at least twelve (12) months. Accordingly, in negotiating the financial requirements of a loan from the RUSA, any REC would be obligated to recognize and provide for this requirement.
¶ 16 There are no similar State law restrictions on the treatment of membership fees. Thus, absent a contrary provision in its by-laws, a REC would be free to use membership fees to satisfy the financial requirements of a RUSA loan.
¶ 17 It is, therefore, the official Opinion of the AttorneyGeneral that:
 1. A rural electric cooperative, organized under theprovisions of the Rural Electric Cooperative Act, 18 O.S. 1991,§§ 437[18-437] to 437.29, may charge different membership fees tomembers within the same class depending upon when the memberjoined the cooperative provided that:
 (a) Such action is necessary, convenient or appropriate tosupplying, promoting or extending the use of electric energy inrural areas;
 (b) Such action is either expressly authorized or notprohibited by the terms and conditions of the cooperative'sby-laws; and
 (c) Such action is not arbitrary or capricious and has areasonable basis in fact.
 2. Rural electric cooperatives are required to treat theircustomer deposits in accordance with the rules of the OklahomaCorporation Commission, OAC 165:35-19-10 to -11, and areprohibited from commingling membership fees with customerdeposits by OAC 165:35-19-10(q). While there is no requirementthat a rural electric cooperative treat its membership fees inaccordance with OAC 165:35-19-10, neither is there anyprohibition against. If authorized by its by-laws, thecooperative may treat membership fees, albeit separately fromcustomer deposits, in accordance with OAC 165:35-19-10.
 3. There is no requirement or prohibition under State orfederal law regarding a rural electric cooperative's use ofmembership fees or customer deposits to meet the financialrequirements of the Rural Utility Services Administrationprovided that such action is authorized by its by-laws.
W.A. DREW EDMONDSON ATTORNEY GENERAL OF OKLAHOMA
RICK D. CHAMBERLAIN ASSISTANT ATTORNEY GENERAL
MICKEY S. MOON ASSISTANT ATTORNEY GENERAL