OKLAHOMA TURNPIKE AUTHORITY v. DYE et ux.

No. 35407.   April 7, 1953.

Rehearing Denied April 28, 1953.

*256 P. 2d 438.*

Leon Shipp and C. E. Barnes, Oklahoma City, for plaintiff in error.

P. D. Erwin, Chandler, for defendants in error.

O'NEAL, J. In this case it appears that on June 22, 1951, plaintiff, Oklahoma Turnpike Authority, brought an action in condemnation in the district court of Lincoln county, against William B. Dye and Lillian B. Dye to acquire a fee-simple title to surface rights to a tract of land consisting of 0.27 acres out of a two-acre tract owned by defendants located in the southeast corner of the N.W.¼ of the S.W.¼ of sec. 27, township 4 north, range 5 east, for use in connection with the construction of its turnpike, and also a temporary grant of approximately .12 acres of land located in the N.½ of the N.E.¼ of the N.W.¼ of sec. 34, for the purpose of use as a detour road.

The commissioners in condemnation were duly appointed, and on the 25th day of July, 1951, returned their report into court fixing defendants' damages in the sum of $10,000. Plaintiff made no demand for jury trial and filed no objection to the report of the commissioners, but on the 17th day of August, 1951, and within the 30 days period in which either party might have demanded a jury trial, attempted to dismiss the proceeding by filing a dismissal in the office of the court clerk of Lincoln county, and by paying costs.

On November 5, 1951, and after the expiration of the time granted by 66 O.S. 1951 §55, in which either party might have filed exceptions to the report of the commissioners, defendants filed a motion to set aside the pretended order of dismissal and requested an order directing plaintiff to pay the amount of damages awarded by the commissioners into the office of the clerk of the court. The motion is based on the ground that the instrument filed by the plaintiff in the office of the court clerk did not constitute a dismissal or discontinuance of the proceedings; that the award of the commissioners was then final; that plaintiff had not abandoned its turnpike project or road but is now constructing such turnpike upon the location indicated in the original plat attached to the petition; that the award made by

the commissioners covered not only defendants' tract of land described in the petition but covered also consequential and other damages sustained by defendants to their land; that by reason of said facts they were entitled to an order vacating the pretended dismissal and to an order directing and ordering plaintiff to pay the amount of the award for compensation and damages into court. On the hearing of that motion plaintiff's engineer and other witnesses testified that shortly after the commissioners filed their report fixing the amount of damages to be awarded against plaintiff, it changed its plans for the construction of the turnpike and completely abandoned its right of way across defendants' land and upon completion of the turnpike no portion of defendants' land will be used or appropriated in the construction thereof, but that the turnpike will cross section 27 immediately south of defendants' land and across land not owned by defendants; that the detour road originally located in sec. 34 has been moved up on section 27 and on land not owned by defendants and upon which plaintiff had acquired the right of way by purchase. The evidence offered by these witnesses is undisputed.

Defendant William B. Dye testified that he is the owner of two acres of land in the southeast corner of section 27 above described and is also the owner of 80 acres of land in section 34 above mentioned. The south line of section 27 is the north line of section 34. This 80-acre tract of defendants consists of Dry Creek bottom. Dry Creek flows in a southeasterly direction across the S.W.¼ of the S.W.¼ of sec. 27 and across the northeast corner of the West 40 acres of defendants' 80-acre farm; that plaintiff's turnpike is being constructed about 250 yards north of his 80-acre farm; that he has a pecan orchard on that farm and at the time of the hearing the turnpike was being constructed. The embankment was about 12 feet high and 250 feet wide. It did not have sufficient outlets to permit accumulated water to flow through

Dry Creek, but the embankment would back the water up over defendants' land and destroy their pecan crop and that the commissioners took such damage into consideration in fixing its award. He further testified that plaintiff had taken possession of his two-acre tract. It entered upon the tract, digging ditches for the purpose of removing a pipeline preparatory to using the tract in connection with the construction of its turnpike. The witness, however, further testified that the ditch was being dug by employees of the Texas Oil Company; that the Texas Oil Company had oil and gas leases on his as well as other adjoining premises; that someone appeared upon the tract and stopped the digging of the ditch and requested the employees to refill it which was accordingly done. The witness further testified that plaintiff used water from a water hole in Dry Creek located on his 80-acre tract for the purpose of mixing concrete to be used in connection with the construction of the turnpike.

Plaintiff offered witnesses who testified employees of the Texas Company dug the ditch upon defendants' two-acre tract without direction from it or without its knowledge; that after acquiring knowledge that it was engaged in this work it stopped the work and requested the employees to fill the ditch which they accordingly did. It had instructed the Texas Company to lower and re-locate its line under the turnpike property; that it was not necessary for them to enter upon defendants' property to accomplish this purpose. It directed the company to make the connection at a point which did not touch any of the land of defendants and to remain on property belonging to it which it had acquired by purchase. Contact was then made at a point east of defendants' land and connection and hookup was made south of their line.

The trial court sustained defendants' motion and directed plaintiff to pay into court the amount of damages fixed by the award of the commissioners.

Plaintiff appeals and asserts that the judgment rendered is not sustained by the evidence and is contrary to law.

Plaintiff contends that the dismissal filed by it with the court clerk operated as a discontinuance and abandonment of the proceedings so far as defendants' property is concerned and the trial court was therefore without jurisdiction to further proceed in the matter. The dismissal was filed under the provisions of 12 O.S. 1951 §684.

Defendants contend that said section applies only to a civil action; that a condemnation proceeding is not such an action but is a special proceeding and that said section is not applicable to such proceeding. The case of Epperson v. Johnson, District Judge, 190 Okla. 1, 119 P. 2d 818, would appear to lend support to this contention.

The mere fact, however, that the dismissal filed by counsel may not have constituted a legal dismissal of the proceeding would not preclude plaintiff from pleading abandonment and insisting upon its right to discontinue the proceeding in defense of the motion filed by defendants. Defendants by their motion placed in issue the question of abandonment and their right to receive compensation awarded them by the commissioners. The issue of plaintiff's right to discontinue and abandon the proceeding was thus placed before the court to the same extent as though plaintiff had then filed its motion to discontinue and abandon the proceeding.

Plaintiff had the right to discontinue and abandon the proceeding at any time prior to the time it took possession of the land sought to be condemned or paid the award. In 30 C.J.S. Eminent Domain, §335 b. the author states:

"In the absence of statutes otherwise prescribing, the general rule is that a condemnor may voluntarily discontinue or abandon the proceedings until there has been a taking, or until there has been a vesting of title or other rights, such as the right to compensation. ***"

In 121 A.L.R. 16, the author states that a condemnation proceeding may be discontinued at any time before the rights of the parties have become reciprocally vested. Sec. 24, art. 2, of the State Constituiton, so far as here material provides:

"* * * Until the compensation shall be paid to the owner, or into court for the owner, the property shall not be disturbed, or the proprietary rights of the owner divested. When possession is taken of property condemned for any public use, the owner shall be entitled to the immediate receipt of the compensation awarded, without prejudice to the right of either party to prosecute further proceedings for the judicial determination of the sufficiency or insufficiency of such compensation. * * *"

66 O.S. 1951 §54 provides:

"When possession is taken of property condemned, as provided herein, the owner shall be entitled to the immediate receipt of the compensation awarded, without prejudice to the right of either party to prosecute further proceedings for the judicial determination of the sufficiency or insufficiency of said compensation."

It is clear under said action of the Constitution and statute that the owner of the land may not be divested of his title until compensation awarded by the commissioners has been paid and that the landowner is not entitled to receive compensation until condemnor takes possession of the property sought to be condemned. This being true the right of the landowner to the compensation award does not become vested and fixed in him prior to the time possession of the property is taken by the condemnor; therefore, condemnor may abandon the proceeding at any time prior to that time. In Board of Com'rs of Pontotoc County v. Rayburn, Adm'r, 192 Okla. 624, 138 P. 2d 820, this court held:

"Where a county, exercising powers of eminent domain, instituted condemnation proceedings and commissioners appointed to appraise lands made reports showing landowner's damages to accrue, but landowner's possessory rights are not disturbed, condemnor is entitled to abandon the proceedings and decline to pay the assessed value of the land sought to be condemned."

Defendants refer to 66 O.S. 1951 §53, in support of their position. This section provides that commissioners shall be appointed to appraise and assess the landowner's damage, and file their report with the court clerk.

The Act further provides that:

"* * * and a certified copy thereof may be transmitted to the register of deeds of the county where the land lies, to be by him filed and recorded (without further acknowledgment or proof) in the same manner and with like force and effect as is provided for the record of deeds. And if said corporation shall, at any time before it enters upon said real property for the purpose of constructing said road, pay to said clerk for the use of said owner the sum so assessed and reported to him as aforesaid, it shall thereby be authorized to construct and maintain its road over and across said premises."

Defendants argue that under this section of the statute title to the property sought to be condemned passes to the condemnor immediately upon the transmission by the court clerk of a certified copy of the commissioners' report to the county clerk. It will be noted that the statutes provide that the court clerk may transmit a certified copy of the commissioners' report to the register of deeds (county clerk). There is no evidence tending to show that such report was in fact transmitted to the county clerk. Assuming, however, that it was transmitted and filed and recorded by him, such transmission, filing and recording would not in itself operate to convey title to the condemnor. Title under the specific provision of such section would not vest in the condemnor until compensation awarded by the commissioners was paid to the landowner. It is conceded that plaintiff has not paid the compensation awarded. This section does not sustain defendants' contention.

Defendants further contend that there was no good faith abandonment of the proceeding; that there has been no change in the location of the turnpike at the point adjoining their 80-acre tract, and that upon completion of the turnpike they will suffer the same damages as found and awarded them by the commissioners. This contention is not sustained by the evidence. The undisputed evidence shows that when plaintiff abandoned its right of way over defendants' land, it also abandoned its original plan in the construction of its roadbed close to defendants' land. It changed its plans of construction. It provided for more and larger outlets for the purpose of draining away accumulating water which plaintiff's engineer testified will be sufficient for that purpose and the water will continue in its natural course through Dry Creek bed as it did prior to the construction of its roadbed, and will prevent it from backing up on defendants' 80-acre tract. If, however, after the completion of the turnpike it should develop that defendants will suffer the expected and anticipated damages to their 80-acre tract as the result of the construction of the turnpike, they may then maintain an action against plaintiff to recover damages sustained by reason of its construction. Chicago, R.I. & P. R. Co. v. Jennings, 175 Okla. 524, 53 P. 2d 691; City of Blackwell v. Murduck, 206 Okla. 466, 244 P. 2d 817.

Defendants further contend that plaintiff could only abandon its right of way over their land by resolution to that effect adopted by its governing board and that abandonment could only be proved by it by the production of such resolution and that it has produced no such resolution. Authorities are cited tending to sustain such contention. These authorities, however, are based on statutes specifically so providing. Defendants concede that we have no such statute. They, however, assert that we should apply such rule independent of statute. This we may not do. The general rule is, in the absence of a statute otherwise providing abandonment of a condemnation proceeding may be proved by oral evidence to the same extent as any other fact may be proved. 30 C.J.S. Eminent Domain, §336.

The evidence is undisputed that no portion of defendants' land will be used or appropriated by plaintiff in the construction of its turnpike. Defendants, however, contend that prior to the hearing on their motion plaintiff had taken possession of their property for use in connection with the construction thereof. The evidence does not sustain such contention. The evidence as to this issue is as above set forth. It is clear that the unauthorized entry of the employees of the Texas Company upon defendants' land and the digging of the ditch thereon, which was later stopped by plaintiff's agent in charge and refilled by the employees, did not constitute the taking of possession of defendants' premises by plaintiff. Nor do we think the taking of the water from the waterhole in bottom of Dry Creek on defendants' 80-acre tract constituted such possession as would preclude the right of abandonment. It was at the most a mere technical or temporary trespass and was not such possession as would give defendants a vested right to compensation. Board of Com'rs of Pontotoc County v. Rayburn, Adm'r, supra.

Defendants also argue that the appeal should be dismissed for the reason that plaintiff could not appeal without depositing the amount of compensation awarded by commissioners into court. This question has heretofore been presented to this court on motion to dismiss the appeal. The motion was denied and we see no reason for changing that order.

Under the undisputed evidence and authorities cited, the trial court should have found that plaintiff abandoned its right of way over defendant's property and should have denied defendants' motion to require plaintiff to deposit the compensation awarded by the commissioners into court.

Reversed, with directions to enter judgment in accordance with the views herein expressed.

HALLEY, C. J., JOHNSON, V.C.J., and WELCH, CORN, DAVISON, WILLIAMS, and BLACKBIRD, JJ., concur.