Parthena McCRADY, Wavie McCrady, Mildred Skidmore, Paul Skidmore, and Parthena McCrady, as Administratrix of the Estate of John H. McCrady, Deceased, Plaintiffs in Error,

v.

WESTERN FARMERS ELECTRIC COOPERATIVE, a Corporation, of Anadarko, Oklahoma, Defendant in Error.

Vernon MEANS and Laverne Means, Plaintiffs in Error,

v.

WESTERN FARMERS ELECTRIC COOPERATIVE, a Corporation, of Anadarko, Oklahoma, Defendant in Error.

Nos. 37619, 37620.

Supreme Court of Oklahoma.

Feb. 18, 1958.

Rehearing Denied March 25, 1958.

358

Paul E. Northcutt, of Northcutt & Northcutt, Ponca City, for plaintiffs in error.

Vernon Collins, Cherokee, Haskall Pugh, Anadarko, Shulter, Shulter & Baker, Kingfisher, Looney, Watts, Looney & Nichols, Anna B. Otter, Oklahoma City, Thomas & Thomas, Woodward, Cecil R. Chamberlin, Frederick, John F. Hudson, Stigler, J. T. Bailey, Cordell, Ben Huey, Norman, Fred R. Harris, Lawton, Moore & Murphy, Stillwater, Harry C. Hicks, Hollis, Peyton E. Brown, Blackwell, Joe Stamper, Antlers, Charles B. Steele, Okmulgee, Jack Rorschach, Vinita, of counsel, for defendant in error.

PER CURIAM.

This is an eminent domain proceeding in which the parties to this consolidated appeal occupied in the trial court the reverse of their positions here. We shall refer to them by their trial court designations.

The plaintiff instituted this proceeding by filing its petition for the appointment of appraisers to determine the compensation due defendants from the condemnation of an easement over their property for the purpose of constructing an electric energy transmission line. In an appropriate manner the defendants challenged the sufficiency of the petition and the right of the plaintiff to condemn their property for this purpose. From the trial court's adverse ruling, they have perfected this appeal. The determination of the issue of compensation has been stayed pending a decision on the plaintiff's right to exercise the power of eminent domain.

██ Defendants' first proposition challenges the sufficiency of plaintiff's petitions. In substance, the petitions alleged that the plaintiff was legally incorporated to do business as a rural electric cooperative with the statutory power of eminent domain as an aid in the performance of its business; that defendants own a specifically described tract of property; that an easement, which is specifically described, "is necessary" for the purpose of erecting, etc., over the defendants' property an "electrical power transmission line"; that plaintiff "has made every possible effort, in good faith," to purchase the easement but defendants have refused to sell; that "The right and/or easement" is necessary to plaintiff for the reasons stated. The petitions detail with some particularity the

type, nature, and location of the structures to be erected. They conclude with a prayer for the appointment of appraisers to assess the value of the easements sought and the damages to defendants' property occasioned by such condemnation by plaintiff. We believe these petitions are sufficient. A proceeding of this nature is a special proceeding, not a civil action. Koch v. Oklahoma Turnpike Authority, 208 Okl. 556, 257 P.2d 790; Oklahoma Turnpike Authority v. Dye, 208 Okl. 396, 256 P.2d 438. The applicable statutes governing the exercise of the power by this plaintiff do not explicitly set forth any requirements for a pleading invoking the court's jurisdiction. Tit. 18 O.S.1951 § 437.1 et seq.; Tit. 66 O.S.1951 § 51 et seq. It is implicit therein, however, that the petition disclose that the party seeking condemnation is authorized to exercise the power, and that he has been unable to make a voluntary purchase of the property. The owner of the property and the specific property sought to be condemned should likewise be alleged. Furthermore, it should appear that the specific property sought to be taken is necessary for a purpose for which the power may be exercised. The allegations of these petitions meet these general requirements. Otero Irr. Dist. v. Enderud, 122 Colo. 136, 220 P.2d 862; Los Altos School Dist. of Santa Clara County v. Watson, 133 Cal.App.2d 447, 284 P.2d 513. We find no statutory requirement of a specific allegation that a resolution of necessity for condemnation had been adopted by the appropriate body. Inasmuch as the determination of a necessity for the exercise of the power is legislative in character and conclusive in the absence of fraud, bad faith, or an abuse of discretion, (Seba v. Independent School Dist. No. 3, 208 Okl. 83, 253 P.2d 559, Arthur v. Board of Com'rs of Choctaw County, 43 Okl. 174, 141 P. 1) a simple allegation of such necessity should be sufficient. The factors overcoming this determination are for the defendant to assert. Neither do we believe that the petition need to specifically characterize the use as a "public use", as such a characterization would be merely a legal conclusion.

Having concluded that these petitions are sufficient in form and the nature of their allegations, we now proceed to examine the substantive merit of defendants' appeal, an issue inherent in the first proposition heretofore stated and one which is specifically presented by the second proposition argued. It is asserted that the statutory delegation of the power of eminent domain to plaintiff is not constitutional; that is, that the attempted exercise of that power by this plaintiff is not the taking of property for a public use. In considering this question we proceed from an assumption of constitutionality.

■ It is undisputed that an authorized exercise of the eminent domain power depends upon the fact that the property is being taken for a "public use" (Art. 2, Sec. 24, Okla.Const.), and that the determination of the character of the use is a judicial question. Thus the definition of the term "public use" could be of controlling importance. We find, from our examination of the authorities, that the definition of that term has undergone somewhat of a metamorphosis in contemporary decisions from the formerly understood meaning of "use by the public." The "housing authority cases" climaxed by the decision in Berman v. Parker, 348 U.S. 26, 75 S.Ct. 98, 99 L.Ed. 27, comprise an analytical delineation of that change. For documentation of the purposefulness of decision on this point and the anguish thereby evoked see: Nichols, The Meaning Of Public Use In The Law Of Eminent Domain, 20 Boston University Law Review, 615; The Public Use Limitation Of Eminent Domain; An Advance Requim, 58 Yale Law Journal, 599; Lashly, Public Housing And Urban Redevelopment, 41 American Bar Association Journal, 501.

■ But adverting to the factual situation at hand, it appears that plaintiff is an entity organized under our statutes establishing Rural Electric Cooperatives "for the purpose of supplying electric energy and

promoting and extending the use thereof in rural areas." Tit. 18 O.S.1951 § 437.1 et seq. It is a federated cooperative organized to supply power to its members, who are distribution cooperatives organized to supply electricity to consumers in most of western Oklahoma. The Rural Electric Cooperative Act was enacted in 1939, and the social and economic conditions existing at that time, and which this Act was intended to remedy, are matters of common knowledge which should not require further exposition. The success of the remedy is no longer a debatable proposition. The particular appropriation here involved is for a purpose authorized by that Act—specifically, the establishment of a 69 KV current electric energy transmission line. Thus, prima facie, it would seem that the plaintiff might be authorized to exercise the power since this court has long been committed to the quite general rule that the distribution of electric energy for public use justifies the power of eminent domain. Tuttle v. Jefferson Power & Improvement Co., 31 Okl. 710, 122 P. 1102.

However, the peg upon which defendants hang their case is the unusual statutory grant of power to such cooperatives to enable them to carry out the overall purposes of the Act. Tit. 18 O.S.1951 § 437.2(d). The pertinent provisions of this section are:

> "To generate, * * * and to distribute, * * * electric energy in rural areas to its members, to governmental agencies and political subdivisions, and to other persons not in excess of ten percentum (10%) of the number of its members; * * *".

Section 437.7(a), Tit. 18 O.S.1951, is also pertinent. It provides that no person: "* * * shall become a member of a cooperative unless such person shall agree to use electric energy furnished by the cooperative when such electric energy shall be available * * *"; that a person shall cease to be a member if he refuses to use electricity made available by the cooperative or if the cooperative does not make electricity available within a specified time;

and that "The by-laws may prescribe additional qualifications and limitations in respect to membership." From the foregoing, defendants argue that condemnation by this plaintiff cannot meet the test of a "public use", since distribution of power is limited to plaintiff's membership. Parenthetically, it should be noted that service by the cooperative is not limited to its membership. In addition, we do not find in the Rural Electric Cooperative Act the discretionary authority in the selection of its membership which defendants contend is granted to cooperatives. We are not here concerned with those corporations organized under Section 421, Tit. 18 O.S.1951.

It must be borne in mind that these rural electric cooperatives are statutory non-profit corporations in which the membership is entitled to a rebate of all charges for service above certain specifically designated expenses and reserves. More persuasive of the more than private nature of the cooperatives is the specific legislative grant of other privileges and exemptions not accorded private corporations. Thus, they are exempt from excise and income taxes except for an in lieu payment of a nominal amount. Section 437.27. They are exempt from the control and jurisdiction of the Corporation Commission, Section 437.26. The members and officers are not individually responsible for any debt of the cooperative. Section 437.21. And, as we all know, the economic existence of these cooperatives was solely dependent upon public funds loaned by the Federal Government to further the same objectives prompting the adoption by our Legislature of this Act. These considerations cannot be ignored in construing the provisions of the statute regarding membership. We are persuaded that the statutory qualifications concerning membership were meant to obviate the possibility of controversy over the ability of the cooperative to furnish electricity within the limit of its available resources, and to insure the economically sound operation at minimum cost of an otherwise essentially public power medium at the local level, dependent upon the loan of public funds

for its existence to perform its public purpose within an area where a need exists. We do not construe the provision authorizing the cooperative by-laws to establish additional qualifications for membership to mean that any cooperative may unreasonably or arbitrarily exclude any citizen within the territory served by its distribution system. And, although there is some authority to the contrary, the better reasoned opinions from other jurisdictions in which this question has been presented are in accord with our conclusion. Bookhart v. Central Electric Power Cooperative, 219 S.C. 414, 65 S.E.2d 781; Capital Electric Power Association v. McGuffee, Miss., 83 So.2d 837; Dairyland Power Cooperative v. Brennan, 248 Minn. 556, 82 N.W.2d 56.

■ The construction of these statutes in the manner of the premise, upon which defendants' argument is based, might render them impotent for the accomplishment of the expressed legislative purpose. Although we assume that individual cooperatives would not undemocratically exclude members of the public from membership, a construction of these statutes which would make this legally possible could effectively thwart rural electrification. We will not ascribe that intent to the Legislature where the conclusion is not inescapable. The Legislature has granted this power. Certainly, the Legislature must be presumed to intend that all its enactments be constitutional.

■ As we have reached the conclusion that cooperatives organized under the Rural Electric Cooperative Act may not arbitrarily or unreasonably exclude the public from membership the attack upon the constitutionality of the exercise of the power of eminent domain by them is without further merit. Condemnation by them is as much for public use as is a condemnation for turnpikes airports public housing, industrial port facilities, parking lots, public hunting grounds, and agrarian reform, all of which involve reasonable restrictions on use and all of which have received judicial approval from various courts. But our conclusion likewise obviates any necessity for an examination by us of the proper definition of the term "public use." Under even the more restricted definition and understanding of that phrase, this situation qualifies as one in which the power is properly exercised. Tuttle v. Jefferson Power & Improvement Co., supra; Bilby v. District Court, etc., 159 Okl. 268, 15 P.2d 38; Delfeld v. City of Tulsa, 191 Okl. 541, 131 P.2d 754, 143 A.L. R. 1032.

■ The last assignment of error urges a lack of evidence to sustain the court's judgment. We might properly dispose of this question upon the basis of the defendants' failure to properly present the evidence for review. However, we have nevertheless examined the record and find ample evidence to sustain a finding of reasonable necessity and public use. The plaintiff's witnesses testified that its board of directors had approved the plans and specifications of this project which had been prepared by qualified engineers. The evidence also disclosed that the project, when completed, will serve various sub-stations at load centers of member cooperatives in the western part of Oklahoma and Kansas; that it is an integral part of the plaintiff's grid system of transmission lines; that the purpose of the completed system is to furnish the members an adequate, dependable source of electric energy at the lowest possible cost; that an easement of this width is not more than is reasonably necessary for this purpose.

Judgment affirmed.

WELCH, C. J., CORN, V. C. J., and DAVISON, HALLEY, JOHNSON, WILLIAMS, BLACKBIRD and CARLILE, JJ., concur.

The Court acknowledges the aid of the Supreme Court Commission in the preparation of this opinion. After a tentative opinion was written by the Commission, the cause was assigned to a Justice of this Court, and thereafter, upon report and consideration in conference, the foregoing opinion was adopted by the Court.