Della GAYLORD et al., Appellants,

v.

The STATE of Oklahoma ex rel. DEPART-
MENT OF HIGHWAYS of the State
of Oklahoma, Appellee.

No. 46173.

Supreme Court of Okahoma.

April 22, 1975.

Appeal Dismissed Sept. 30, 1975.

Harvey L. Harmon, Sr., Franklin, Harmon & Satterfield, Inc., Oklahoma City, for appellants.

Allen D. Gray, Jr., Oklahoma City, for appellee.

DOOLIN, Justice.

The controversy in this case arises out of condemnation proceeding instituted by the Department of Highways against landowner Della Gaylord.

The issue to be decided is whether a covenant in a prior deed to the state, of a portion of Mrs. Gaylord's land, whereby the state agreed to connect landowner's remaining property to a frontage road, requires the state to give value for the remaining tract higher than the minimum required by the standard of highest and best use.

We hold that it does not.

The property concerned is at the intersection of 122nd Street and the Broadway Extension. Mrs. Gaylord's parcel is located in the southeast quadrant of this intersection. In 1970, Mrs. Gaylord sold a portion of her property to the state of Oklahoma for the construction of a "frontage road" adjacent to the recently built limited access highway, known as the Broadway Extension. The warranty deed given by Mrs. Gaylord and prepared by the state, created an exception that retained in Mrs. Gaylord, the "right of access from the remaining portion of her property onto a frontage road, to be constructed between said property and the limited access highway."

After the 1970 purchase, the need arose for the state to acquire the balance of Mrs. Gaylord's property to construct an unusual type of access ramp entering and exiting from the highway on the south side of 122nd Street. This remaining tract is the subject of the present condemnation suit.

The representative of the state who called on Mrs. Gaylord attempted to purchase this remaining property for $5,850.-00. Mrs. Gaylord refused the offer as being inadequate and the state immediately filed the present condemnation proceeding.

It is stipulated by both parties that the value of the property condemned, must be based on the hypothetical situation assuming the state had abided by the contractual requirements in the 1970 deed and connected her property to a frontage road instead of condemning it.

"Frontage road" is defined by statute 69 O.S.1971 § 218 which reads:

"A road constructed adjacent and parallel to but separated from the highway and *connected* thereto at least at each end, for service to abutting property and for control of access." (Emphasis added)

This definition must necessarily be incorporated by reference into the deed to determine the hypothetical construction of the frontage road required by the deed.

The lower court was asked by both parties to instruct the commissioners to appraise Mrs. Gaylord's property as though the frontage road had been completed and did in fact connect to the Broadway Extension at 122nd Street.

In appraising property adjacent to a dispersal type highway such as the Broadway Extension, consideration must be given to the accessibility of such property. This accessibility can be determined

in part by the number of access ramps connecting the highway to the frontage road.

Initially the state asked the court to instruct the commissioners to value the land assuming only one access ramp connected the frontage road to the highway at 122nd street. Mrs. Gaylord requested the commissioners to value the land as if four access ramps were constructed.

The court then issued two alternative sets of instructions to the commissioners. The first alternative instructions ordered the commissioners to assume that the frontage road was connected to the Broadway Extension by *two* ramps instead of one ramp as the state initially requested. The second alternative instructions provided for valuation as if connected by four ramps as suggested by Mrs. Gaylord.

It is Mrs. Gaylord's basic contention that nothing short of four ramps located in the four quadrants of the intersection would satisfy the covenants contained in the 1970 deed. With such conclusion we do not agree.

The trial court found that the state's requested instructions of a one ramp access would not meet the requirement to "connect", and decided that a two ramp construction would grant Mrs. Gaylord access from the frontage road at both ends as promised. The state agreed to the substitution of the two ramp instruction and Mrs. Gaylord claims error.

■ A condemnation proceeding is not a civil action but a special proceeding. *Oklahoma Turnpike Authority v. Dye,* 208 Okl. 396, 256 P.2d 438 (1953). The court was acting in a ministerial, not a judicial capacity. A judicial question is not presented until the time of the report of the commissioners. *Town of Ames v. Wybrant,* 203 Okl. 307, 220 P.2d 693 (1950). It was within the power of the court to submit the two ramp instruction to the commissioners in place of the one ramp instruction.

The commissioners filed the two reports; the two ramp instruction valued the land at $50,900, the four ramp instruction at $61,000.

Jury trial demands and exceptions to both reports were filed by the state. Mrs. Gaylord filed exceptions to the two ramp report on grounds that it was based on improper instructions and in the alternative in the event the court did not reject the two ramp report, demanded jury trial.

At hearing upon the return of commissioners, the trial court ordered the four ramp report rejected and vacated, and confirmed the two ramp reports. It was from this ruling that Mrs. Gaylord appeals.

■ The state admits that had Mrs. Gaylord's remaining property not been needed, it would have been bound by the deed and the statute to "connect" the frontage road to her property and to the highway at both ends. But it contends that a two ramp connection at the 122nd street end is all that is required by the statutory definition of frontage road.

Mrs. Gaylord contends that the court must interpret the deed under the peculiar facts of this case. She submits that the word "connect" in the statute and thus incorporated in the deed is a technical word and must be interpreted as used by persons engaged in the profession of highway design and construction.

With this in mind she called as an expert witness at the hearing, a professional highway engineer specializing in design and familiar with the Broadway Extension. His testimony indicated that each and every intersection on the Broadway Extension south of 122nd street was built with a four ramp diamond shaped access. He stated that if he were directed to "connect" a frontage road to the Broadway Extension at 122nd street he would design it to move traffic in both directions: by the use of four access ramps. Mrs. Gaylord submits that this testimony means that the word "connect" can only be interpreted in one way to require a four ramp construction at 122nd street.

We cannot agree. The witness did not testify that this was the only way to "connect" the frontage road, only that this would be the way he would design it.

Evidence shows, however, that today the highway *is* connected to the frontage road at 122nd street by four ramps, although not in the standard diamond design.

Mrs. Gaylord cites *Stinchcomb v. Oklahoma City,* 81 Okl. 250, 198 P. 508 (1921) for the proposition that the provisions of the Oklahoma Constitution that provide for the taking of private property by emminent domain must be construed strictly in favor of the owner. This would apply equally to the construction of a statute or a deed involved in condemnation proceedings.

■ In *N. L. R. B. v. Hearst Publishing Inc.,* 322 U.S. 111, 64 S.Ct. 851, 88 L.Ed. 1170 (1944), the issue was whether newsboys are "employees" of the publishers. The Court defined the term "employees" but left as a question of fact whether particular individuals were indeed employees. Thus the Trial Court in the instant case should instruct as to the meaning of "connect", but leave to the jury the question of application as fact, as to value of two or four ramp construction. We construe the phrase "and connecting thereto at least at each end" as used in the statutory definition of frontage road to define a minimum requirement that would be met by either a two ramp or a four ramp access at each end. We would leave to the jury the question of which construction would be used in this particular locality.

If the state had not condemned the remaining portion of Mrs. Gaylord's property and had built the highway with only a two ramp access at 122nd street, Mrs. Gaylord would not have had a cause of action for damages against the state. This action by the state would have been a valid exercise of the sovereign police power in the regulation of highway traffic, not an exercise by the state of the power of eminent domain. *Gibbons v. Missouri, K & T. R. Co.,* 142 Okl. 146, 148, 149, 285 P. 1040 (1930).

■ Whether construction of a frontage road and elimination of access to a highway constitutes a "taking" requiring compensation is a question of law for the court, not a question of fact for a jury. *Brock v. State Highway Commission,* 195 Kan. 361, 404 P.2d 934 (1965).

This is not a case of inverse condemnation. There was no "taking" of access. The state actually built the highway with a four ramp access and in doing so took the remaining property of Mrs. Gaylord. Thus the question became one of value of the land *including the value of access* rather one of inverse condemnation and extent of damages because of the taking of an access.

Courts have frequently held that any and all purposes to which the land is adapted should be considered and that value is determined by considering the highest and best use to which the land might be put within the reasonably near future and what a purchaser would pay for such land considering such uses. *People v. Schultz,* 123 Cal.App.2d 925, 268 P.2d 117 (1954), *City of Tulsa v. Biles,* 360 P.2d 723 (Okl.1961).

■ The "limited access features" of a highway and its effect on market value of landowner's remaining land may be considered by a jury in valuing such land. See *Medearis v. State ex rel. Department of Highways,* 341 P.2d 607 (Okl.1959).

In *Lloyd v. State ex rel. Department of Highways,* 428 P.2d 261 (Okl.1967), the deed from the land owner to the state contained the same type of covenants as Mrs. Gaylord's deed. We held that under the evidence it was for the trier of fact to determine whether prior to the taking the land had commercial value. The landowner in that case was permitted to introduce into evidence testimony of the highest and best use of the land, including its *locality and surroundings.*

 The definition of connect does not require the frontage road to be connected to the highway by four ramps as Mrs. Gaylord suggests. However, there cannot be a frontage road that leads to nowhere. The way it is constructed and the way other access roads in that locality are constructed must be taken into consideration by the trier of fact when appraising the land.

Amendments to Mrs. Gaylord's Petition in Error ask the Court to require the state to deposit with the District Court Clerk a sum sufficient to indemnify Mrs. Gaylord for out-of-pocket expenses as an element of just compensation for the property and rights taken and also a sum sufficient to indemnify her for attorneys' fees.

 Pursuant to 69 O.S.1971 § 1203(e)(f)[1] if Mrs. Gaylord recovers a verdict more favorable to her than the $50,000.00 assessment of the commissioners as accepted by the trial court, she will be entitled to all costs of trial and this appeal. But attorneys' fees and expenses are not embraced within just compensation for land taken by eminent domain *Dohaney v. Rogers,* 281 U.S. 362, 50 S.Ct. 299, 74 L. Ed. 904, 68 A.L.R. 434 (1930).

 Although attorneys' fees may properly be awarded in inverse condemnation proceedings,[2] no statutory authority exists for awarding attorneys' fees in a condemnation proceeding by the state. The right to recover attorneys' fees or costs rests upon statutes and cannot be allowed or recovered unless given by statute. *Evans v. Central Life Ins. Co.,* 87 Kan. 641, 125 P. 86 (1912), *Keel v. Covey,* 206 Okl. 128, 241 P.2d 954 (1952), *Ex Parte Kelly,* 261 P.2d 452 (Okl.1953).

Reversed and remanded.

WILLIAMS, C. J., HODGES, V. C. J., and DAVISON and BERRY, JJ., concur.

IRWIN, LAVENDER, BARNES and SIMMS, JJ., dissent.

---

1. (e) . . . If the party demanding such trial does not recover a verdict more favorable to him than the assessment of the commissioners, all costs in the District Court shall be taxed against him.

(f) . . . and in no case shall the Department be liable for the costs on such review or appeal unless the owner of the real property shall be adjudged entitled, upon either review or appeal, to a greater amount of damages than was awarded by the commissioners.

2. 27 O.S.1971 § 10.