2015 OK CIV APP 78

**OKLAHOMA TURNPIKE AUTHORITY, a Body Corporate and Politic, Plaintiff/Appellant,**

v.

**SIEGFRIED COMPANIES, INC., Defendant/Appellee,**

and

**Glenn F. Anderson, Jr.; Lynn Mensch Anderson; Glenn F. Anderson, Jr. as Trustee of the Glenn F. Anderson Trust; the Board of County Commissioners of the County of Tulsa; the Treasurer of Tulsa County, Oklahoma; the Heirs, Devisees, Administrators, Executors, Personal Representatives, Successors and Assigns of Glenelle M. Anderson, Deceased, and their Successors, Other Defendants.**

**No. 111,585.**

Court of Civil Appeals of Oklahoma, Division No. 3.

April 3, 2015.

Jot Hartley, Bryce P. Harp, Daniel Giraldi, The Hartley Law Firm, P.L.L.C., Tulsa, Oklahoma, for Plaintiff/Appellant.

Timothy T. Trump, Julia L. Forrester–Sellers, Conner & Winters, L.L.P., Tulsa, Oklahoma, for Defendant/Appellee.

WM. C. HETHERINGTON, JR., Chief Judge.

¶ 1 Appellant Oklahoma Turnpike Authority (OTA) filed this condemnation proceeding in 1999 in Tulsa County District Court against numerous defendants to acquire several tracts of land for constructing the Creek Turnpike in the same county. After the Commissioners' report was filed, OTA timely filed a demand for jury trial and paid the award amount that the court disbursed in July of 2000 to Appellee Siegfried Companies, Inc. (Siegfried). OTA now appeals the trial court's finding OTA "failed to prosecute its objection to the amount of the Commissioners' award," upon which a judgment was entered dismissing OTA's demand for jury trial, vesting it with title to the condemned real property, and awarding Siegfried the full Commissioners' award. Based on the applicable law and undisputed facts, we RE-VERSE the order and REMAND the case for further proceedings.

## FACTS

¶ 2 It is undisputed OTA took possession of the subject property after the court-approved disbursement of the Commissioners' award to Siegfried in July 2000.[1] According to the record, as confirmed by the certified court appearance docket, there was no activity until March 2003, when OTA's first motion for scheduling conference and a scheduling order were both filed. After four years of inactivity, OTA again moved for a scheduling conference and in July 2007 another scheduling order was filed. In January 2008, Siegfried filed an application for pretrial conference and for discovery extension. By April 2008 another scheduling order and two amendments had been filed, and in June 2008, the trial court granted Siegfried's unopposed motion for leave to conduct remaining discovery.

¶ 3 Four more years passed with no activity, and in September 2012, OTA filed its third motion for scheduling conference. The trial court responded with a *sua sponte* order, striking a scheduling conference and ordering OTA to show cause within 15 days "why the matter should not be dismissed pursuant to Rule 9, failure to prosecute." In its response, OTA explained this specific condemnation action was one of sixty it had filed on or about the same time for the same Creek Turnpike project, its counsel had participated in active litigation in at least 50 of the cases since the filings, with mediation in over 30 cases, 15 jury trials to date, and the subject case was the last unresolved case out of the initial filings. OTA claimed the case's last place order was intended to avoid any appearance of special treatment for Siegfried's owner who was also an OTA board member. In addition, OTA claimed counsel had performed significant work in the case, there is a $513,000.00 disparity between the Commissioners' award and OTA's expert appraiser, the 15 jury verdicts "have totaled an amount that is one-half of the total commissioners' awards in those [15] cases," and the court's refusal to allow a trial in this case "could cost [OTA], its bondholders, and toll paying users from [$400,000] to over [$500,-000]."

¶ 4 The next month Siegfried replied, claiming "no owners have been on the board of the OTA since the early 1990's," OTA had not conducted substantial discovery, and "[Siegfried] was pursuing [OTA's expert appraiser's] deposition when the case dropped into another period of stagnation."[2] Siegfried also cited "Oklahoma District Court Rule 9(b)" and "12 O.S. § 1083" to support the action's "dismissal without prejudice" if the

---

1. In the disbursement order filed July 1, 2000, the trial court found Siegfried "is the owner of fee simple title in and to the real property sought to be condemned by [OTA]" and "pursuant to the stipulation and agreement of the Defendants [Siegfried] is entitled to receipt of the balance of the just compensation determined by the Commissioners in the amount of $795,414.00." The same order finds OTA deposited the award with the Tulsa County Court Clerk on April 22, 1999. Record, p. 52.

2. In the "Background Facts" section, Siegfried simply stated his belief that "plans to pursue this lawsuit had been abandoned." Because it is undisputed OTA took possession of the condemned property, abandonment is not an issue in this case. *Oklahoma Turnpike Authority v. Dye*, 1953 OK 109, 208 Okla. 396, 256 P.2d 438.

plaintiff fails to show good cause and argued it would be prejudiced due to the difficulty "to resurrect information, find files and tap memories about comparable sales transactions that occurred over 13 years ago."

¶ 5 In January 2013, the trial court filed an order allowing Siegfried 20 days to brief and "state their case on" OTA's authority, *State ex rel. Department of Highways v. O'Dea,* 1976 OK 133, 555 P.2d 587, cited "for the proposition that condemnation proceedings cannot ordinarily be dismissed under Rule 9."[3] A week later, OTA filed a supplement to its show cause response.

¶ 6 Siegfried timely filed its response to the court's last order, pointing out the difference between dismissal of a *case* and dismissal of a *claim* and clarifying it was seeking "dismissal only of the OTA's *objections* to the amount of the Commissioners' award and its demand for jury trial on such matters, *not* dismissal of the entire condemnation proceeding." (Italics in original.) After acknowledging the Supreme Court's explanation in *O'Dea* that "title vests in the condemnor (the OTA) when the just compensation awarded by the Commissioners has been paid to the landowner and the condemnor takes possession of the property," Siegfried contends the Court's concern in that case was "it could not 'un-ring' the bell ... and render a nullity [of] what has already been done (transfer of title, possession and just compensation) by dismissing the entire action." Siegfried argued *O'Dea* 1) was not binding on the trial court because the issue presented there was "dismissal of an entire case. It did not involve a request to dismiss a single claim within the case"; and it 2) does not hold condemnation proceedings can never be dismissed."

¶ 7 In its judgment, the trial court agreed with Siegfried, finding OTA has "failed to prosecute its objection to the amount of the Commissioners' award within the meaning of Rule 9 of the District Courts of Oklahoma and this Court's inherent powers to control its docket." The trial court further found "the jury trial regarding the amount of the

Commissioners' award has been effectively waived by [OTA's] inaction in prosecuting its exception" to that award. After finding 1) OTA "is entitled to condemn the real property ... and that title to such property now vests in [OTA]"; and 2) Siegfried "is rightfully entitled to the full amount of the Commissioners' award, which payment has already been distributed to and received by [Siegfried]," the trial court ordered "[OTA's] objections to the amount of the Commissioners' Award and demand for jury trial is HEREBY DISMISSED" and "final judgment be entered in this condemnation case, vesting [OTA] with title to the real property ... and entitling [Siegfried] to the full amount of the Commissioners' Award of $795,414.00." OTA timely appealed the judgment.

## APPELLATE ARGUMENTS/STANDARD OF REVIEW

¶ 8 OTA argues the "order of dismissal" should be reversed because: 1) the trial court's authority to dismiss for failure to prosecute, Rule 9 of the Rules of the District Court of Oklahoma, was stricken by the Supreme Court; 2) the mandatory rules for dismissal do not apply to condemnation cases; 3) dismissal under 12 O.S. § 1083 is precluded because the proceeding is "at issue"; and 4) the trial court abused its discretion when depriving OTA of its vested and absolute right to a jury trial.

¶ 9 Siegfried argues for affirmance of the judgment, contending 1) only OTA's "claim" or "objection to the amount of the Commissioners' award and demand for jury trial" was dismissed, 2) the court's decision to dismiss preceded the Supreme Court's ruling to strike Rule 9 and was proper at the time, 3) independent of Rule 9, the trial court was authorized by its inherent power to dismiss for lack of prosecution, 4) the trial court did not grossly abuse its discretion, and 5) the right to a jury trial in this context is not absolute because it can be waived voluntarily, or by failing to timely request trial by jury.

---

**3.** The same order states "[t]his Court is very concerned that this case is precisely one that should be dismissed for failure to prosecute, giv-

en the totality of circumstances as raised by [Siegfried]." Record, p. 164.

¶ 10 Neither party provides the appropriate standard of review to be applied by this Court, but OTA's last argument suggests our review is abuse of discretion. However, in light of the significance of the parties' "right to jury trial" arguments, this Court concludes the dispositive issue in this appeal is whether, under the specific facts of this condemnation proceeding, the trial court's dismissal of OTA's "objection to the amount of the Commissioners' award and demand for jury trial" for an alleged failure to prosecute pursuant to Rule 9(b) and its inherent power violated OTA's right to a jury trial as granted by Art. II, § 24 of the Oklahoma Constitution.

¶ 11 A violation of the right to jury trial not only implicates due process, but presents a fundamental constitutional issue that is reviewable *de novo*. *In re H.M.W.*, 2013 OK 44, ¶ 13, 304 P.3d 738, 741 (father's conduct in refusing writ of habeas corpus to attend jury trial in parental rights termination case neither constituted a waiver of jury trial nor an objection to a jury trial in absentia). De novo review is plenary, independent and non-deferential. *M.J. Lee Construction Co. v. Oklahoma Transportation Authority*, 2005 OK 87, ¶ 11, 125 P.3d 1205, 1210. "It is well settled that 'Courts have a duty to enforce strict observance of the constitutional and statutory provisions designed to preserve inviolate [the] right to, and purity of jury trial.'" *Fields v. Saunders*, 2012 OK 17, ¶ 10, 278 P.3d 577, 581.

*ANALYSIS*

¶ 12 Art. II, § 24 of the Oklahoma Constitution states, in pertinent part:

... Any party aggrieved *shall have the right* of appeal, without bond, and *trial by jury* in a court of record. Until the compensation shall be paid to the owner, or into court for the owner, the property shall not be disturbed, or the proprietary rights of the owner divested. When possession is taken of property condemned for any public use, the owner shall be entitled to the immediate receipt of the compensation

awarded, *without prejudice* to the *right of either party* to prosecute further proceedings for the *judicial determination of the sufficiency or insufficiency of such compensation.* (Emphasis added.)

In concert with § 24's grant to *either party* of an "absolute right to a jury trial" for assessment of just compensation, the Oklahoma Legislature has provided the "condemnation procedures for effectuating the right to a jury trial." *State ex rel. Department of Transportation v. Cole*, 2009 OK 40, ¶ 10, 236 P.3d 49, 51.

¶ 13 In this case, the applicable condemnation procedures statute is 69 O.S.2011 § 1708(b),[4] by which the OTA is authorized to "condemn lands or interests therein" upon compliance with that statute's requirements, including notice. The same section requires the court to appoint three disinterested landowners as Commissioners whose duties are to inspect the land and determine just compensation for the land proposed to be taken. As relevant here, if not satisfied with the Commissioners' determination, "*either party* may within sixty (60) days after the filing of such report file with the clerk a *written demand for a trial by jury,* in which case the amount of damages *shall be assessed* by a jury, and the trial *shall be conducted* and judgment entered in the same manner as civil actions in the district court." *Id.*

¶ 14 "All parties in interest to condemnation proceedings are entitled to notice of proceeding and jury trial *unless they waive such rights.*" (Emphasis added.) *State ex rel. Dept. of Highways v. Pate*, 1976 OK 144, ¶ 11, 555 P.2d 1040, 1042. "This court has consistently held that filing of demand for jury trial is effective only for the period allowed by statute after the filing of the report ... [w]e continue to so hold." *State ex rel. Dept. of Transp. v. Perdue*, 2008 OK 103, ¶ 14, 204 P.3d 1279, 1284. The consequence for *failing to timely file* a demand for jury trial is *waiver* of the party's constitutional right to a jury trial as granted by Art. II, § 24. *Talkington v. City of Chickasha*, 1975 OK 93, ¶ 6, 537 P.2d 419, 421.

4. There have been no amendments to § 1708 since 1991, so the version in effect when OTA filed this proceeding in 1999 is identical to the current version.

¶ 15 In this case, it is undisputed OTA timely filed its demand for jury trial. Nevertheless, the trial court found "the *jury trial* regarding the amount of the Commissioners' award has been *effectively waived* by the *inaction* of [OTA] in prosecuting its exception" to that award. (Emphasis added.) Thus, the trial court's dismissal is based solely on OTA's conduct or "inaction" after the filing of its demand for jury trial in compliance with § 1708(b).

¶ 16 "The law disfavors *implied waivers* of the *right to trial by jury* based on local custom, procedure, practice and rule." *Jarvis v. Wolfe*, 2007 OK 23, ¶ 3, 158 P.3d 1051, 1052. In *Terry v. Gassett*, 1987 OK 60, ¶ 10, 740 P.2d 141, 145, the Supreme Court held (quoting *Seymour v. Swart*, 1985 OK 9, ¶ 5, 695 P.2d 509, 511–512):

> Except as modified by the Oklahoma Constitution, the right to trial by jury remains inviolate.... *When the Constitution provides that the right of trial by jury shall be inviolate, legislation must be construed strictly and observed vigilantly **in favor of the right**.* This right cannot be abrogated arbitrarily by a court; it can be surrendered *only by voluntary consent or waiver.* (Italics and bold type added.)

¶ 17 "*Trial by jury* may *only* be waived in one of the statutory methods." (Emphasis added.) *Jackson v. General Finance Corp.*, 1953 OK 22, 208 Okla. 44, 253 P.2d 166. Pursuant to 12 O.S.2011 § 591:

> A *trial by jury may be waived by the parties,* in actions arising on contract, and *with the assent of the court in other actions,* in the following manner. By the consent of the party appearing, when the other party fails to appear at the trial by himself or attorney. By *written consent,* in person or by attorney, *filed with the clerk.* By *oral consent,* in open court, *entered on the journal.*

In this case, there clearly has been no waiver by OTA as required by § 591.

¶ 18 Art. II, § 24 uses the verb "shall have" when *granting* the right of a jury trial. Section 1708(b) uses "may" to address either party's *right to file a demand for a jury trial* within the prescribed 60–day period and, referring back to the filing of a demand by either party, uses "shall" twice in the following phrase, "in which case the amount of damages *shall be assessed* by a *jury,* and the trial *shall be* conducted and judgment entered in the same manner as civil actions in the district court."

¶ 19 "Generally, the term 'shall' in the Constitution is mandatory and *precludes alternative means of carrying out a mandate.*" (Emphasis added.) *Oklahoma Elec. Co-op., Inc. v. Oklahoma Gas and Elec. Co.,* 1999 OK 35, ¶ 9, 982 P.2d 512, 514. Similarly, "shall" used by the Legislature in a statute normally requires interpretation as a command. *Minie v. Hudson,* 1997 OK 26, ¶ 8, 934 P.2d 1082, 1085. Construing these constitutional and statutory provisions in favor of the right to a jury trial as required by *Terry v. Gassett,* we conclude such mandatory language, particularly § 1708(b), eliminates a trial court's authority to decide the issue of just compensation in a condemnation case *when* a party has filed a demand for a jury trial in compliance with the statutory procedures set in § 1708(b) *and* has not *since* waived its right by one of the three methods required by § 591.[5]

¶ 20 OTA also contends the trial court had no authority to dismiss its demand for jury trial based on "Rule 9(b)" of the Rules of the District Court of Oklahoma.[6] We agree. Effective April 2013, however, the Supreme Court in *Cornett v. Carr,* 2013 OK 30, ¶ 13, 302 P.3d 769, struck Rule 9 in its entirety and made its decision applicable "prospec-

---

5. Oklahoma condemnation cases support that waiver of a demand for jury trial has been presented for many years by *filing* a written "motion to dismiss" or one that is "dictated into the record," *see Short v. State Highway Commission,* 1931 OK 352, ¶ 2 & ¶ 10, 151 Okla. 85, 1 P.2d 676, 678, or a "Withdrawal of Demands for Jury Trial," *see Williams v. State ex rel. Dept. of Transportation,* 2000 OK CIV APP 19, 998 P.2d 1245.

6. Under Rule 9(b), a district court was permitted to require a plaintiff to show why the action should not be dismissed for lack of diligence in prosecution, and if good cause was not shown, the court "shall dismiss the action without prejudice." *See Boston v. Buchanan,* 2003 OK 114, ¶ 8, 89 P.3d 1034, 1038.

tively—controlling only those cases currently pending or filed after the issuance of this opinion." ¶ 13. Contrary to Siegfried's argument, OTA's *appeal* in this condemnation case filed one month before *Cornett* was decided was already in the pipeline,[7] and therefore it qualifies as a "currently pending case" to which *Cornett* applies. Accordingly, the Supreme Court's striking of this rule eliminates Rule 9(b) as supporting authority for the trial court's dismissal for failure to prosecute in this case. Furthermore, OTA's demand for jury trial clearly placed the issue of damages "at issue" in this proceeding which, although expressly cited as authority, would also preclude dismissal under 12 O.S.2011 § 1083.

¶ 21 However, the trial court also relied on its "inherent powers to control its docket" when dismissing OTA's objection and demand for jury trial. We have reviewed the cases from other jurisdictions Siegfried cites as supporting the court's inherent power to dismiss condemnation proceedings and find them unpersuasive for several reasons. There is no argument made by Siegfried and no indication in the cited cases that constitutional and/or statutory provisions relating to condemnation in those respective states are identical or sufficiently similar to Oklahoma's constitutional and statutory provisions to justify acceptance of those courts' holdings. There is also no discussion in the cases of statutory requirements for waiving a party's right to a jury trial like Oklahoma has provided by § 591. Finally, unlike in this case, there was no error or issue raised about violating a party's right to a jury trial in the cited cases.

¶ 22 More importantly, "Oklahoma has long recognized the power inherent in the court to control its own docket, that courts are created for the purpose of administering justice under the law, and that to accomplish that purpose a court must have the power to facilitate and expedite causes before it *so long as the reasonable exercise of these inherent powers do not prejudice the rights of the parties* involved." (Emphasis added.)

*In re Lorice T. Wallace Revocable Trust,* 2009 OK 34, 219 P.3d 536, 538 (*Hambright v. City of Cleveland,* 1960 OK 184, ¶ 15, 360 P.2d 493, 496). In this case, there have been no arguments that potential witnesses have since died. As we view it, the prejudice argued by Siegfried pales in comparison to that argued by OTA, *i.e.,* dismissal of its demand for jury trial will force OTA to pay significantly more money for the condemned property, the result of which impacts both its bondholders and toll-paying customers. Siegfried also never disputed OTA's claim in its show cause response of the potential for earned interest on the Commissioners' award by Siegfried during the delay in this proceeding.

■ ¶ 23 This Court in no way condones lack of diligence in prosecuting a condemnation proceeding. However, in light of the dismissal of OTA's properly-exercised right to jury trial under § 1708, without a waiver required by § 591, we find the trial court's exercise of its inherent powers, under the facts of this case, was unreasonable and prejudiced OTA's constitutional and statutory rights to a trial by jury for determination of the issue of just compensation. Consequently, we reverse the judgment and remand this proceeding for a jury trial. Our conclusion is consistent with Oklahoma case law holding that in equitable proceedings the defenses of laches and estoppel do not generally apply to the government on the ground of public interest and public policy. *Oklahoma Department of Securities ex rel. Faught v. Blair,* 2010 OK 16, ¶ 28, 231 P.3d 645, 662; *see also Board of Education of Independent School Dist. No. 48 of Hughes County v. Rives,* 1974 OK 153, ¶ 9, 531 P.2d 335, 337.

**REVERSED AND REMANDED**

JOPLIN, J., concurs; MITCHELL, P.J., dissents.

---

7. "The 'pipeline doctrine' refers to those interests presently in litigation (*i.e.,* the case before the court, cases pending before the trial tribunals or *in the appellate litigation process*) or capable of

being litigated *when the new rule is announced."* (Emphasis added.) *Strelecki v. Oklahoma Tax Commission,* 1993 OK 122, 872 P.2d 910, 926.